11-4109-cv
Fed. Treasury Enter. v. SPI Spirits Ltd.

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

---

August Term, 2011

(Argued: June 11, 2012                    Decided: August 5, 2013)

Docket No. 11-4109-cv

---

FEDERAL TREASURY ENTERPRISE SOJUZPLODOIMPORT, AND OAO "MOSCOW
DISTILLERY CRISTALL,"

*Plaintiffs-Appellants*,

ZAKRYTOE AKTSIONERNOE OBSCHESTVO, "LIVIZ,"

*Plaintiff*,

–v.–

SPI SPIRITS LIMITED, SPI GROUP SA, YURI SHEFLER, ALEXEY OLIYNIK, ALLIED
DOMECQ INTERNATIONAL HOLDINGS B.V., ALLIED DOMECQ SPIRITS & WINE
USA, INC., DBA ALLIED DOMECQ SPIRITS, USA, WILLIAM GRANT & SONS USA,
WILLIAM GRANT & SONS, INC., SPIRITS INTERNATIONAL B.V., FKA SPIRITS
INTERNATIONAL N.V.,

*Defendants-Appellees*.

---

B e f o r e:

MCLAUGHLIN, CABRANES, AND CARNEY, *Circuit Judges*.

Plaintiffs-appellants, a government-chartered Russian entity and its licensee,
allege that defendants-appellees infringed certain registered trademarks

related to the Russian vodka known as "Stolichnaya," in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(b). The District Court dismissed their claims for want of statutory standing to sue. On appeal, plaintiffs argue that their interests in the trademarks are sufficient under the Act to prosecute these claims. Acknowledging that the Russian Federation is the owner of the Marks, plaintiff FTE nonetheless contends that it is entitled to sue for the Marks' infringement because the Russian Federation "entrusted" it with care of the Marks, and it is either the Russian Federation's "assign" or "legal representative." See id. § 1127. Cristall has derivative standing, they argue, as FTE's exclusive licensee for Stolichnaya vodka in the United States. Plaintiffs further maintain that they are entitled to proceed because the Russian Federation has "ratified" their suit. Because we conclude that plaintiffs have not alleged facts sufficient to support their suit in the claimed capacities, we AFFIRM the decision of the District Court.

---

KATHLEEN M. SULLIVAN (Marc L. Greenwald, Jonathan Oblak, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY (John B. Quinn, David W. Quinto, David H. Bromberg, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, Redwood Shores, CA, *on the brief*), *for Plaintiffs-Appellants*.

EUGENE D. GULLAND (Oscar M. Garibaldi, Bingham B. Leverich, Hope Hamilton, Kerry L. Monroe, *on the brief*), Covington & Burling LLP, Washington, DC (Emily Johnson Henn, Michael C. Nicholson, Covington & Burling LLP, Redwood Shores, CA, New York, NY, *on the brief*), *for Defendants-Appellees Spirits International B.V., SPI Spirits Limited, SPI Group SA, Yuri Shefler and Alexey Oliynik*.

DAVID H. BERNSTEIN (Michael Schaper, *on the brief*), Debevoise & Plimpton LLP, New York, NY, *for Defendants-Appellees Allied Domecq International Holdings B.V. and Allied Domecq Spirits & Wine USA, Inc.*

EDWARD T. COLBERT, Kenyon & Kenyon LLP, Washington, DC (Michelle M. Marsh, Kenyon & Kenyon LLP, New York, NY, *on the brief*), *for Defendants-Appellees William Grant & Sons USA and William Grant & Sons, Inc.*

SUSAN L. CARNEY, *Circuit Judge*:

Plaintiffs-appellants the Federal Treasury Enterprise Sojuzplodoimport ("FTE"), a state-chartered entity of the Russian Federation, and OAO "Moscow Distillery Cristall" ("Cristall"), FTE's exclusive licensee (FTE and Cristall together, "plaintiffs") appeal from the judgment of the District Court (Daniels, *Judge*) dismissing their claims for trademark infringement against defendants SPI Spirits Limited and other related individuals and corporations (together, "defendants"). Plaintiffs' infringement claims rest on a theory that defendants misappropriated and, since the early 1990s, have made unauthorized commercial use in the United States of certain United States-registered trademarks related to "Stolichnaya"-brand vodka (the "Marks").[1] Plaintiffs maintain that defendants' asserted title to the Marks is invalid, and that defendants' use of the Marks infringes the rights of the Marks' purported true owner, the Russian Federation. In this appeal, we examine whether plaintiffs

---

[1] The original mark was registered in the U.S. Patent and Trademark Office in 1969 by a Soviet entity. The "Marks" also refer, however, to derivative marks registered thereafter by or on behalf of the Soviet Union and others.

3

themselves have sufficient claim to the Marks to sue for infringement under the Lanham Act (the "Act").

We conclude that, under the operative provisions of the Act, FTE is neither (1) the Russian Federation's "assign" of the Marks (for it has not been granted all relevant rights associated with the Marks by a duly executed writing) nor (2) its "legal representative" (for the complaint provides no basis to conclude that the Russian Federation is unable to pursue Lanham Act remedies). See 15 U.S.C. § 1127. We further conclude that Cristall may not sue, since its rights as a plaintiff are purely derivative of those held by FTE, and FTE may not grant rights greater than its own. We reject plaintiffs' joint argument that they are entitled to proceed because the Russian Federation has "ratified" their suit. Neither plaintiff, therefore, is entitled to sue for infringement under 15 U.S.C. § 1114(1), and, accordingly, we AFFIRM the District Court's dismissal of plaintiffs' Third Amended Complaint with prejudice.

## BACKGROUND

Having set forth the factual background of this case at length in Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 623 F.3d 61, 63-66 (2d Cir. 2010) ("FTE II"), we address the facts here only insofar as they are relevant to the legal issues implicated by this appeal. Because plaintiffs

4

challenge the District Court's grant of a motion to dismiss plaintiffs' Third Amended Complaint (the "operative complaint" or "complaint"), the description provided below is drawn primarily from the allegations set forth in that document and from documents attached to it, incorporated in it by reference, or otherwise relied on by plaintiffs in bringing suit. See ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

1.    The Trademarks

This dispute arises out of the contested ownership of American trademarks related to "Stolichnaya" vodka, a well-known distilled spirit originally made in Russia, and whose iconic Russian name can be translated as "from the capital."[2]  According to the complaint, "STOLICHNAYA brand vodka has been owned either by the Soviet Union or by the Russian Federation" for decades. Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V., Third Am. Compl. ¶ 27, No. 04-08510 (S.D.N.Y. Feb. 22, 2011), ECF No. 142 ("Am. Compl."), J.A. 261.  In the late 1960s, the Soviet Union, acting through a state-run enterprise, registered a trademark in "Stolichnaya" with the United States Patent and Trademark Office (the "USPTO").  Over the subsequent decades, the USPTO issued other trademark registrations

---

[2]  The label of this brand of vodka includes a representation of the famous Hotel Moscow (or "Hotel Moskva"), located in the heart of the capital, near the Kremlin.

5

relating to Stolichnaya to various entities.[3]

In 1990, as the Soviet Union collapsed, Evgeniy Filippovich Sorochkin, the General Director of VVO-SPI (the Soviet enterprise then holding the Marks), sought personally to acquire VVO-SPI's assets, including the Marks, through a new corporation. The corporation formed by Sorochkin purported to privatize VVO-SPI. It then entered into a series of complex transactions that ultimately vested all defendants with at least putative interests in the Marks, either by license or assignment.[4]

In the early 2000s, the Russian Federation – as successor to interests held by Soviet-created state enterprises – is alleged to have discovered that Sorochkin and others had failed to comply with laws governing the privatization of state assets when they conducted the relevant transactions a decade earlier. In December 2000, a Russian court held that,

---

[3] Related marks are also registered in foreign jurisdictions, but those do not concern us here.

[4] Defendants are individuals and corporations whose claimed title to the Marks – or license to use the Marks – derives from the allegedly ineffective privatization of VVO-SPI. Defendants are: Yuri Shefler and Alexey Olinik, the individuals who allegedly controlled the private corporation that attempted to acquire VVO-SPI's assets, including the Marks; Spirits International B.V., formerly known as Spirits International N.V., to which Shefler and Olinik purported to transfer the Marks; Allied Domecq International Holdings, B.V. and Allied Domecq Spirits & Wine USA (together, "Domecq"), later assignees of the Marks; SPI Group S.A., a corporation that has claimed ownership of the Marks, and SPI Spirits Limited, both of which are part of the "SPI Group," a group of companies allegedly owned or controlled by Shefler and Oliynik; and William Grant & Sons, Inc. and William Grant & Sons USA (collectively, "Grant & Sons"), distributors allegedly licensed by other defendants to distribute vodka bearing the Marks in the United States.

6

under Russian law, VVO-SPI continued to exist as a public entity. As one consequence of that holding, and pursuant to applicable Russian laws, the Russian Federation then "withdrew the rights and property entrusted to [VVO-SPI]," and gradually, through manifold legal and bureaucratic maneuvers, re-assumed its rights, including the rights to the Marks. Am. Compl. ¶ 132, J.A. 283.

FTE describes Russian law as prohibiting governmental bodies from "conduct[ing] business activities." Am. Compl. ¶ 133, J.A. 284. After retrieving its rights to the Marks, therefore, the Russian Federation, acting through its Ministry of Agriculture and Ministry of Property Relations, formed FTE as a new state-chartered entity charged with (as alleged here) "exploit[ing] the STOLICHNAYA trademarks" on behalf of the Russian Federation. Id.; see also Am. Compl. ¶ 132, J.A. 283.

2.     Formation of FTE

In a series of decrees issued over time, the Russian Federation endowed FTE with certain rights. Centrally relevant here are three source documents conveying those rights: (1) FTE's Charter, which was adopted by the Russian Federation in a March 2002 decree;[5] (2) a July 2002 decree that

---

[5] The Charter's 2002 adoption followed a decree issued in late December 2001, which created FTE and required the Ministry of Agriculture to craft a charter for the new organization. The terms of the 2001 decree carry little substance.

7

governs FTE's rights to various trademarks, including the original United States-registered Stolichnaya Mark; and (3) a January 2005 decree that addresses FTE's right to prosecute suits in foreign courts.[6]

FTE's Charter sets forth the "Purposes and Subject of Activities of the Enterprise," the "Property of the Enterprise," and the "Rights and Responsibilities of the Enterprise." It does not, however, expressly mention Stolichnaya or any of the Marks. Rather, the Charter advises generally that FTE was established "for the purposes of organizing the manufacture of products, . . . [and] wholesale and retail trade" of vegetables, fruits, spices, coffee, tea, soft drinks, and "all types of strong . . . drinks" – a phrase that, none dispute, includes vodka and other alcoholic beverages. Charter ¶ 10, J.A. 416. The Charter also imparts to FTE the authority to organize the "export and import of all types of strong . . . drinks" and to "us[e] in accordance with established procedure the trade marks of strong drinks [and] alcoholic products." Charter ¶ 11(c),(i), J.A. 417. It entitles FTE to "protect[ ] and restor[e] . . . the Russian manufacturers' violated rights to trade marks of any products." Charter ¶ 11(j), J.A. 417.

---

[6] In our review of these key documents and relevant Russian laws, we rely on translations provided by the parties in the Special Appendix. The parties have not called to our attention any material disputes as to the accuracy of those translations.

8

The Charter also outlines the relationship between FTE and the Russian Federation, declaring that property "entrusted" to FTE, Am. Compl. ¶ 13, J.A. 259, "shall be in federal ownership," but "shall be assigned [to FTE] in accordance with established procedure for operative administration." Charter ¶ 13, J.A. 417. With respect to property "assigned" to it, the Charter limits FTE's authority. For example, in addition to the unexceptional limitation that FTE "shall not be entitled to carry on activities which are not provided for by [the] Charter," FTE also is "not . . . entitled to alienate or otherwise dispose of the property assigned [to it] except with the consent of the federal executive authorities." Charter ¶¶ 12, 17, J.A. 417.

In addition, the Charter retains for the "Government of the Russian Federation" the right "to impound any property assigned to [FTE] that is excessive, is not used at all or is not used in conformity with its purpose." Charter ¶ 18, J.A. 417. Finally, the Charter expressly contemplates the possibility of "winding-up" FTE "in accordance with established procedure by decision of the Government of the Russian Federation and on other grounds contemplated by civil legislation of the Russian Federation." Charter ¶ 40, J.A. 420.

9

In contrast to the Charter, the July 2002 decree refers expressly to the original United States-registered Stolichnaya Mark:[7] it authorizes FTE to "use and dispose (without the right to assign)," "in accordance with the procedure established by the Ministry of Agriculture," certain listed "alcoholic and spirituous" marks, including the Stolichnaya Mark.  July 2002 Decree ¶ 1, J.A. 423.  It further directs that "the Ministry of Agriculture of the Russian Federation  . . . [will] develop and approve the procedure for the use by [FTE] of the trade marks."  Id. ¶ 2.

Issued three years later, "in response to inquiries by foreign courts," the January 2005 decree was intended to "confirm[ ] FTE's right to sue in foreign courts in its own name to protect or recover the Russian[ ] Federation's rights to trademarks for alcoholic products [abroad]."  Am. Compl. ¶ 140, J.A. 285.  It states that FTE is "charge[d]" with "represent[ing] the interests of the Russian Federation in the courts on matters of recovery and protection of the rights of the Russian Federation to the trademarks for alcoholic products abroad," and "to realize registration of the rights of the Russian Federation to the mentioned trademarks abroad."  2005 Decree ¶ 1, J.A. 425.  Of note for present purposes, it includes an express sunset

---

[7] The July 2002 decree identifies the relevant trademark as: "'Stolichnaya' (label), certificate No. 38388 dated 10 October 1969."  July 2002 Decree, List *6, J.A. 423.

10

provision, providing that its authorization will be valid only until January 1, 2006, id. ¶ 2, but FTE further alleges that unnamed "[s]ubsequent decrees, the newest of which remains in force, have continued to confirm FTE's authority." Am. Compl. ¶ 140, J.A. 285.

FTE has exercised its authority with regard to the Marks in a number of ways, it alleges. Among other things, at an unspecified time, it granted an exclusive license to Cristall to manufacture, for sale in the United States, vodka and other products that bear the Marks. Further, FTE has sued to enforce Stolichnaya trademarks, not only in the United States, but in the Netherlands and other countries as well.

3. <u>Procedural History</u>

In October 2004, FTE sued defendants Shefler, Oliynik, and Domecq in the United States District Court for the Southern District of New York.[8] In its original complaint, FTE asserted ten separate claims in the nature of unfair competition and trademark or copyright infringement, some under the Lanham Act, others under state common law, and one under

---

[8] Initially, Obschestvo S Ogranichennoi Otvetstvennost'yu Chernogolovskii Zavod Alkogol'noi Produkcii ("Ost Alco"), an FTE-licensed manufacturer, was a plaintiff in this suit. Ost Alco transferred its interest to a second manufacturer licensed by FTE, Zakrytoe Aktsionernoe Obschestvo ("Liviz"), which appears as a plaintiff in the above caption. As plaintiffs explain the progression, "Liviz stopped pursuing this case while it was initially on appeal, and FTE [then] licensed its current co-plaintiff Cristall." Appellants' Br. 5 n.1 (citations omitted).

11

Article 10 of the Paris Convention for the Protection of Industrial Property. Original Complaint ("Orig. Compl.") ¶¶ 105-47, J.A. 69-77. In addition to seeking defendants' related profits and "FTE's damages," FTE requested a declaratory judgment confirming its right to the Marks; rectification of the U.S. trademark register to show FTE as the Marks' holder; and cancellation of "STOLICHNAYA-Related Marks." Orig. Compl. at 35, J.A. 78.

Defendants moved to dismiss, arguing that FTE lacked statutory standing to enforce the Marks and that defendant Domecq's claimed rights in the Marks had become "incontestable" under the Act.[9] See 15 U.S.C. § 1065(1)-(4). The District Court granted defendants' motion, agreeing that the Marks had become incontestable and that therefore FTE's challenge to the validity of defendants' assignment of the Marks to Domecq was barred. See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 425 F. Supp. 2d 458 (S.D.N.Y. 2006) ("FTE I"), *vacated in part by* FTE II, 623 F.3d 61 (2d Cir. 2010). The District Court also considered and dismissed certain of FTE's common law claims. Id. at 473-76.

On appeal, our Court affirmed the District Court's dismissal of FTE's common law claims, but vacated the dismissal of FTE's Lanham Act

---

[9] The status of "incontestability" serves, subject to certain qualifications, as "conclusive evidence of the . . . registrant's exclusive right to use the registered mark." 15 U.S.C. § 1115(b).

12

claims. See FTE II, 623 F.3d at 63. In contrast to the District Court, we concluded that the incontestability doctrine posed no obstacle to FTE's challenge to defendants' claim of ownership in the Marks absent a demonstration that defendants had received the Marks through a valid assignment. Id. In a concurrent summary order, however, we found that – despite additional briefing submitted at our request – the record remained too sparse to determine whether, under Federal Rule of Civil Procedure 19, additional parties required to be joined if feasible (in particular, the Russian Federation) were missing from the litigation. In this regard, we observed that – notwithstanding its literal grant to FTE of the right to "represent the interests of the Russian Federation in the courts on matters of recovery and protection of the rights of the Russian Federation to the trademarks for alcoholic products abroad" –  the January 2005 decree "on its face, does not appear to be an obvious transfer of ownership . . . to FTE." Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 400 F. App'x 611, 614 (2d Cir. 2010) (summary order). The panel left it to the District Court on remand to "determine, in the first instance, whether the required parties are before it." Id.

In February 2011, FTE filed its third amended complaint. In it, FTE added its "exclusive licensee," Cristall, as a plaintiff, and Grant & Sons,

SPI's new distributor, as a defendant.  Defendants again moved to dismiss, arguing that FTE – and, by extension, Cristall – lacked standing to sue under the Lanham Act.

Looking to the Lanham Act's requirement that a party be a "registrant" to have standing to sue under Section 32(1), 15 U.S.C. § 1114(1), and the Act's definition of registrant as embracing the registrant's "legal representatives, predecessors, successors and assigns," 15 U.S.C. § 1127, the District Court agreed with defendants and held that plaintiffs lacked standing under the Lanham Act.  It concluded that FTE did not qualify as an "assign" of the Russian Federation within the meaning of the Lanham Act, finding insufficient the complaint's allegation that FTE was "entrusted . . . with" and granted the "exclusive right to use the Marks."  Am. Compl. ¶ 13, J.A. 259.  Reasoning that FTE's Charter "indicates in clear and unambiguous language" that FTE's rights over the trademarks entrusted to it "are neither tantamount to ownership, nor sufficient to permit Plaintiff FTE to exclude the Russian Federation from taking action with respect to the Marks," and noting FTE's concession that the Russian Federation – not FTE – owned the Marks, the District Court found the grant inadequate for Lanham Act standing purposes, because a trademark assignment requires the "sale or transfer of *all* rights in the mark."  Fed. Treasury Enter. Sojuzplodoimport v.

14

Spirits Int'l B.V., No. 04 Civ. 0851, 2011 WL 4005321, at *6-7 (S.D.N.Y. Sept. 1, 2011) ("FTE III") (emphasis added); see also Am. Compl. ¶ 136 (referring to the Russian Federation's "ultimate ownership of both FTE and the Marks").

The District Court held further that FTE was not a "legal representative" of the Russian Federation within the meaning of the Act. The court explained that, although the January 2005 decree authorized FTE to sue to protect the Marks on the Russian Federation's behalf, the "plain and ordinary meaning of the term 'legal representative'" is one who appears on behalf of a trademark owner that is "unable or incapable of representing itself and enforcing its own rights." Id. at *5. The court held that FTE had failed to allege facts plausibly showing that it was somehow necessary for FTE to pursue this litigation in its own name or that the Russian Federation was unable to appear before the court. Id. at *5-6.

Judgment for defendants was entered on September 8, 2011. This appeal followed.

## DISCUSSION

### I. Legal Framework

Standard of Review. We review *de novo* the District Court's grant of defendants' motion to dismiss for want of statutory standing. See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003). On review, we accept "all

15

well-pleaded allegations in the complaint as true and draw[ ] all reasonable inferences in plaintiff[s'] favor." Bigio v. Coca-Cola Co., 675 F.3d 163, 169 (2d Cir. 2012) (alteration and quotation marks omitted). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Choice of Law. Although the Marks were developed in Russia and are used around the world, plaintiffs' claims in this suit derive from the Marks' registration in the United States. Therefore, United States law provides the relevant framework for addressing whether plaintiffs are entitled to bring suit under the Lanham Act. See Berni v. Int'l Gourmet Rests. of Americas, Inc., 838 F.2d 642, 646 (2d Cir. 1988). To proceed under the Act, a plaintiff's "rights in the mark must be established with reference to U.S. law." Id. (concluding that former foreign shareholders in a United States trademark registrant incorporated abroad lacked statutory standing to bring a Lanham Act trademark infringement claim).

16

Plaintiffs contend, however, that "the rights transferred by the charter [and other documents] must be determined under the law of the Russian Federation," and argue that FTE's rights under Russian law are sufficient to support their standing to sue here. Appellants' Br. 22. For support, they cite to our opinion in Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir. 1998), where we stated in a copyright dispute involving a Russian plaintiff that "Russian law is the appropriate source of law to determine issues of ownership of rights." Id. at 90. Importantly, however, in Itar-Tass we declined to consider which law determined the validity of an assignment of rights, id. at 90 n.11, and we observed that "[u]nder United States law, an owner . . . may sue for infringement in a United States court only if it meets the standing test" set out by the Copyright Act, id. at 91. For our purposes here, then, Itar-Tass supports plaintiffs' view that Russian law may be relevant to this dispute. But Russian law is only relevant in helping to determine the relationship between FTE and the Russian Federation vis-a-vis the Marks. United States law guides our determination of whether this relationship extends sufficient rights to FTE for it to be characterized as an "assign" or "legal representative" with standing to sue under Section 32(1) of the Lanham Act.

## II. Lanham Act Standing

The Lanham Act was intended "to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127). Toward this end, the Act provides separate causes of action for, among other things, infringement of registered and unregistered trademarks. See 15 U.S.C. § 1114 (registered trademark); id. § 1125 (unregistered trademark or trade dress); see also Two Pesos, 505 U.S. at 767-68.

Section 32(1) of the Act, 15 U.S.C. § 1114(1) – at issue here – protects only registered trademarks. It provides a cause of action against any person who "use[s] in commerce any . . . imitation of a registered mark . . . likely to cause confusion, or to cause mistake, or to deceive." Id. This cause of action is available, however, only to "registrant[s]" of the trademarks at issue, a term the Act defines as embracing the actual registrant's "legal representatives, predecessors, successors and assigns." 15 U.S.C. § 1127. In other words, only registrants – as statutorily defined – have "statutory standing" to bring an action under Section 32(1). See Allen v. Wright, 468 U.S. 737, 751 (1984) (explaining that to have standing, "a plaintiff's complaint [must] fall within the zone of interests protected by the law invoked"). This

18

provision contrasts with Section 43 of the Act, which allows suits "by *any person* who believes that he or she is or is likely to be damaged" by the defendant's actions.  15 U.S.C. § 1125(a)(1) (emphasis added).  FTE's standing here – in this action under Section 32(1) – thus hinges on whether it has alleged facts plausibly showing that it falls within the statute's definition of "registrant."[10]  As FTE's exclusive licensee, Cristall's standing depends in its entirety on FTE's.

FTE acknowledges – as it must – that the Russian Federation is the "true owner" of the Marks.  See Am. Compl. ¶ 78, J.A. 270.  It contends nonetheless that it falls within the Act's definition of "registrant."  First, it asserts that the Russian Federation has "assigned" to it the Federation's ownership interest in the Marks.  Second, and alternatively, it maintains that it is the Russian Federation's "legal representative" for purposes of pursuing this infringement claim.

We note as an initial matter that in none of FTE's complaints has it expressly alleged that it is either an assign or a legal representative.  FTE

---

[10] The question whether a plaintiff has "statutory standing" under a particular statute often overlaps with the question whether she has a cause of action under that statute.  Indeed, the Supreme Court has observed that it may be "exceedingly artificial to draw a distinction between the two."  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 97 n.2 (1998).  Generally, however, the "cause of action" assessment concerns whether "*any* plaintiff has a cause of action under the statute," whereas the "statutory standing" assessment concerns whether "*this* plaintiff has a cause of action under the statute." Id.

19

argues, however, that the complaint's allegation that "FTE is the only entity with the right to use and dispose of the Marks," Am. Compl. ¶ 136, J.A. 284, is sufficient to establish statutory standing at this stage. Although it may be peculiar that the relevant terminology does not appear in the operative complaint, this absence is of course not fatal to plaintiffs' standing arguments, for we may perform a functional analysis to determine whether the Act's requirements are met. And at this stage, we may look not only to the complaint but also to documents incorporated into the complaint by reference and relied on by the plaintiffs in bringing suit. See Border v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005). Such documents include the Charter and the 2002 and 2005 Decrees. In examining these documents, we are mindful that any ambiguities should be resolved in plaintiffs' favor. See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

We first address whether FTE is an "assign" of the Russian Federation with regard to the Marks, and conclude that it is not. Second, we address the meaning of the phrase "legal representative" as used in the Act – an issue that appears to be one of first impression among federal courts of appeals – and conclude that the District Court correctly determined that this term denotes not merely one whom an appointing entity designates its "legal

20

representative," but requires in addition that the appointing entity be legally unable to bring suit on its own behalf.  Because FTE has not sufficiently alleged that the Russian Federation is unable to appear in this litigation, FTE is not a "legal representative" with standing to sue under Section 32(1).

A.     <u>FTE Is Not an "Assign" or its Equivalent under the Lanham Act</u>

Plaintiffs argue that FTE is an "assign" of the Marks because it has been granted "exclusive rights" to the Marks, including the right "to use, license and enforce the Marks" – in essence, maintaining that it is either a true assign, or, as an exclusive licensee of the Russian Federation, it has rights tantamount to those conveyed in an assignment.  Appellants' Br. 19.  Defendants retort that FTE's rights to the Marks fall short of those required to constitute an assignment for purposes of the Act.  We think that defendants have the better of the argument.

At least two requisites are inherent in the concept of assignment under the Act: (1) the need for the relevant assigning document to be effected "by instrument[ ] in writing duly executed," 15 U.S.C. § 1060(a)(3); and (2) the need for the assignment to transfer an ownership interest in the marks at issue.  Because the conveyance to FTE falls short on these measures, we conclude that FTE is not an "assign" of the Russian Federation for statutory

21

standing purposes under the Act. We then turn to the question whether, casting FTE as the Russian Federation's exclusive licensee, FTE's rights are nonetheless tantamount to those of an assign. We answer that question, too, in the negative.

### 1. "Duly Executed Instrument in Writing"

Section 10 of the Act declares, "Assignments shall be by instruments in writing duly executed," 15 U.S.C. § 1060(a)(3), and directs the USPTO to "maintain a record of information on assignments," id. § 1060(a)(5).

The various documents presented to support plaintiffs' position that FTE is an "assign" of the Russian Federation do not resemble an assignment under United States law, even taking them flexibly and as a cumulative whole. As discussed above, although the Charter refers generally to "property assigned" to FTE,[11] it does not expressly mention the Marks. The July 2002 decree, which does refer to a Stolichnaya Mark, does not declare that the Russian Federation is *assigning* anything to FTE; rather, the document provides that the Russian Federation is conveying to FTE the rights to "use and dispose" of one of the Marks, without any mention at all of assignment, or transferring ownership, or the good will symbolized by the Marks. J.A. 423.

---

[11] Paragraph 16 provides in relevant part, "The sources of formation of the Enterprise's property shall be as follows: (a) property assigned to the Enterprise in accordance with established procedure." Charter ¶ 16, J.A. 417.

Although we do not here purport to set out a bright-line rule requiring that Lanham Act assignments take a particular written form, we note just how far the Charter's (and the decrees') language lies from the unequivocal transfer of title and good will normally required to effectuate an assignment of rights. <u>Cf.</u> Restatement (Second) Contracts § 324 ("It is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person without further action or manifestation of intention by the [assignor].").

Regulations issued by the USPTO reflect an expectation that assignments will be clearly stated in writing, and the assigned marks identified with specificity. Thus, to register a trademark assignment, the USPTO requires that the assignee submit a cover sheet with information including "[e]ach trademark registration number and each trademark application number" or "a copy of the application or a reproduction of the trademark." 37 C.F.R. § 3.31(a)(4)(i). None of the documents at issue here states that Russia has transferred title to the Marks to FTE, and only one Mark is identified in any of the documents empowering FTE.

Although it may seem formalistic, the "writing requirement" is rooted in real policy concerns. In the copyright context, the Ninth Circuit has explained that the Copyright Act's assignment-related writing requirement,

17 U.S.C. § 204(a), serves the ends of (1) ensuring that the owner of intellectual property will not assign it inadvertently; (2) forcing parties to determine the precise rights being transferred; and (3) enhancing predictability and certainty of ownership. Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990). Similarly, the predictability and certainty arising from a clear writing assigning a trademark dovetail comfortably with the standing requirements of Section 32(1). A clear writing effecting an assignment signals to the parties and the world that the assign is the party that owns the mark and is authorized to exclude others from use. There is no such writing in the record before us, nor is such a writing adequately alleged in the complaint.

### 2. *Transfer of Ownership Rights in the Marks*

Even if we were to treat the Act's formal writing requirement as potentially satisfied by aspects of the Charter and the 2002 and 2005 decrees, those documents leave the Russian Federation with not only ownership, but simply too great an operational interest in the Marks for us to consider the Federation as having assigned the Marks to FTE for purposes of the Act.

According to one acknowledged authority in the field, an assignment "is an outright sale of *all rights* in that mark." 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18:1 (4th ed.

24

2012) (emphasis added). Professor McCarthy further advises that an "assignment" is "by definition . . . a legal document that transfers title to the mark." Id. § 18:7; see also id. § 18:15 ("After an assignment, the assignor has divested itself of its trademark rights."). Other commentators have echoed this view. See, e.g., Siegrun D. Kane, Kane on Trademark Law § 21:1 (2011 ed.) ("A trademark assignment is a transfer of ownership. The trademark owner (assignor) gives up all rights to the mark. Those rights are acquired by the assignee, who stands in the shoes of the assignor."); Restatement (Third) of Unfair Competition § 34 (1995) ("The owner of a trademark, trade name, collective mark, or certification mark may transfer ownership of the designation to another through an assignment.").[12]

Regulations promulgated by the USPTO similarly suggest its expectation that a trademark assignment will effect a transfer of ownership. Those concerning the issuance of a "[n]ew certificate on change of ownership" require that "[t]he assignment or *other document changing title* must be recorded in the [USPTO]." 37 C.F.R. § 2.171(a) (emphasis added).

---

[12] In ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586 (5th Cir. 2003), the Fifth Circuit, citing to both the McCarthy and the Kane treatises, similarly described the "assignment" of a mark as the "assignee step[ping] into the shoes of the assignor . . . . [and thereby] acquir[ing] . . . *all* the rights and priorities of the assignor." Id. at 593 (emphasis added and internal quotation marks omitted). Other circuits have endorsed the approach, also describing an assignee as "step[ping] into the shoes of the assignor." Carnival Brand Seafood Co. v. Carnival Brands, Inc., 187 F.3d 1307, 1310 (11th Cir. 1999); Premier Dental Prods. Co. v. Darby Dental Supply Co., 794 F.2d 850, 853 (3d Cir. 1986).

Finally, in the more specific context of standing under Section 32(1), Professor McCarthy concludes that both as a matter of statutory interpretation and under general principles of trademark law, "only the owner of the trademark is entitled to sue for its infringement." 6 McCarthy § 32.3. And district courts in this Circuit have long held – and persuasively reasoned – that a party is not an "assign" for standing purposes under the Lanham Act unless that party owns the mark at issue.[13]

Our own case law on the subject is sparse, but we appear to have accepted that a transfer of an ownership interest in a mark is a predicate to standing for any putative "assign." In DEP Corp. v. Interstate Cigar Co., 622 F.2d 621 (2d Cir. 1980), for example, we considered whether the exclusive distributor of soap bearing a registered trademark could sue for infringement. To determine whether the plaintiff had functionally been assigned the mark at issue, we looked to the language of the distribution agreement. That

_____

[13] See Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011) ("[L]icenses for particular uses, or other documents not purporting to transfer *ownership* in the mark, are not assignments as the alleged assignor has not parted with all rights."); Calvin Klein Jeanswear Co. v. Tunnel Trading, No. 98 Civ. 5408, 2001 WL 1456577, at *4 (S.D.N.Y. Nov. 16, 2001) ("Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 1114."); Nordco A.S. v. Ledes, No. 95 Civ. 7753, 1997 WL 570546, at *3 (S.D.N.Y. Sept. 15, 1997) (finding no valid assignment of trademark rights on the ground that "there is no document conveying title or ownership of the trademark to [the plaintiff]"); Silverstar Enters., Inc. v. Aday, 537 F. Supp. 236, 239 (S.D.N.Y. 1982) ("[A]n assignment of a trademark is a transfer of the entire interest.").

26

document provided that the plaintiff "shall not during the continuance of this arrangement or thereafter have or claim any right whatsoever whether of user or otherwise to or in any such trade marks, trade names or brands used in connection with [p]roducts." Id. (internal quotation marks omitted). We found this express language dispositive, even if the plaintiff as an exclusive distributor "has the greatest interest in bringing an infringement action." Id. at 624. The agreement "deni[ed] the [plaintiff] any property interest in the trademark," id. at 623, and we accordingly concluded that the plaintiff could not bring a claim for infringement under Section 32(1).

FTE argues that these cases and authorities misinterpret the Act insofar as they require that an "assign" obtain ownership of or title to a mark. According to FTE, Congress could have limited standing under Section 32(1) to trademark owners, as it did elsewhere in the Act, see 15 U.S.C. § 1125(d)(1)(A) (providing standing in cyberpiracy cases only to the "owner" of the mark). Instead, Congress chose to enlarge standing for violations of Section 32(1) to include a registrant's "legal representatives, predecessors, successors and assigns." FTE maintains that this list of proper plaintiffs includes entities that do not actually *own* the trademarks at issue, and so ownership cannot be a *sine qua non* of statutory standing. Further, FTE notes that Professor McCarthy – who elsewhere asserts that an assignment

27

amounts to "an outright sale of all rights in that mark" – also observes that an "assignment is valid even though it may reserve certain rights of use of the mark in the assignor." 3 McCarthy § 18:8.

Here, however, we need not precisely delineate the bundle of rights that a trademark assignment must extend to a purported assignee to support the latter's standing to bring a Section 32(1) suit. It is enough to say that in this case, in consideration of all of the relevant authorities, too many rights remain with the Russian Federation for it to be deemed to have "assigned" the Marks to FTE.

Thus, the Charter expressly states that "[t]he property of the enterprise shall be in federal [*i.e.*, Russian Federation] ownership," and that the property shall be transferred to FTE only "for operative administration in accordance with the laws of the Russian Federation." Charter ¶¶ 13, 14, J.A. 417. FTE argues that, under Russian law, providing an assignment for "operative administration" is tantamount to an assignment under the Lanham Act. For example, FTE advises that article 113 of the Russian Civil Code provides that the property of a "unitary enterprise" like FTE shall "*belong* to that enterprise by right of economic jurisdiction or operative management." Special Appendix ("SPA") 73 (emphasis added). Further, parties that possess property by right of "operative administration" are

28

legally authorized under Russian Civil Code article 305, we are told, to defend their possessory rights against the actual owner of the property. SPA 79.

Russian law, however, appears to be much more equivocal than FTE suggests. Defendants point to provisions of the Russian Civil Code that suggest strongly that "state unitary enterprises" are "not endowed with the right of ownership." Russian Civil Code art. 113(1), SPA 73. Further, Russian law allows institutions within which "property has been consolidated by right of operative management" to "possess, use, and dispose of this property *within the limits established by a law* in accordance with the purposes of its activity, the assignments of the owner of this property, and the designation of this property." Id. art. 296(1), SPA 76 (emphasis added).

Without purporting to tender a definitive reading of Russian law, we can nonetheless observe that the Civil Code is consistent with the limitations placed on FTE's rights to the Marks by the Charter and decrees, and does not so enhance FTE's operational rights as to render it an assign under United States trademark law. The Charter expressly *prohibits* FTE from alienating or otherwise disposing of any property assigned to it by right of operative administration, and allows the Russian Federation to impound property transferred to FTE and to "wind-up" FTE. Similarly, the July 2002 decree provides that FTE has the right "to use and dispose (without the right

29

to assign)" the Marks, and states that any such use shall occur only "in accordance with the procedure established by" agencies of the Russian Federation.  J.A. 423.

Not only do Russian law and the relevant decrees direct that the Russian Federation retain formal title to the Marks, then, but they expressly reserve to the Russian Federation certain rights that are generally inherent in the concept of ownership.  Thus, FTE has no right to assign the Marks absent permission from the Russian Federation, and nothing that we have been directed to in the governing documents suggests that FTE has been conveyed a general right to exclude others from use of the Marks.  See 1 McCarthy § 2:14 ("A Trademark is a Right to Exclude").  FTE has identified no constraint on the Russian Federation's authority to use the Marks itself if, for example, the Federation determines in its sole discretion that the Marks are not being used for their "proper purpose."  The Russian Federation also appears free to withdraw FTE's rights to use the Marks, and to grant others similar rights.  Although in the future we may find a trademark assignment effective to confer standing where the assignment reserves certain rights in the assignor, FTE has not cited any persuasive authority within or outside our Circuit holding that a valid assignment of a trademark right can occur when the putative assignor retains the right to rescind the trademark, to

30

grant a license for its use to others, or to exclude others from using the mark. We decline to create such a rule here.

3.      *FTE's Statutory Standing as an Exclusive Licensee*

FTE argues further that even if the Russian Federation has not actually "assigned" the Marks, FTE's exclusive right to use the Marks in the United States and abroad – in effect, an exclusive license – is sufficient to support FTE's statutory standing to sue under Section 32(1).  Some district court opinions appear to offer support for this argument.  <u>See, e.g.</u>, <u>Telebrands Corp. v. Del Labs., Inc.</u>, 719 F. Supp. 2d 283, 293 (S.D.N.Y. 2010) (holding that where an exclusive licensee has "broad rights to sell" a product with a registered trademark "royalty free, [and] for a potentially unlimited period" and does "not set forth any restrictions on [the licensee's] ability to enforce the trademarks," the licensee has standing to sue for infringement under Section 32(1)); <u>Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.</u>, 339 F. Supp. 2d 944, 959-61 (W.D. Mich. 2004) (concluding that an exclusive license that also extends "the right to pursue actions for infringement of the mark" is sufficient to establish standing to sue for infringement).

But Congress could easily have included "licensee" or "exclusive licensee" among the terms in 15 U.S.C. § 1127 that define a "registrant."  It chose instead to limit standing to parties having a more specific set of

31

interests in the registered mark. A plaintiff therefore must show that its "license" amounts, in fact, to an assignment to establish entitlement to sue under Section 32(1). See 3 McCarthy § 18:5 ("Even though a contract states that it is a 'license,' a court will not be governed by form, and the contract will be upheld as an assignment of trademark rights if that is its actual legal effect."); 3-11 Gilson on Trademarks § 11.02(1)(b) ("Gilson") (same). For the reasons discussed above with respect to the putative assignment, see Part II.A.1 & 2, plaintiffs' allegations fall short here. As defined by United States law, FTE is not, in fact, the "assign" of the Marks, and therefore may not sue under Section 32(1) on that basis.

In addition, we observe that plaintiffs' complaint does not allege facts plausibly showing that FTE was granted an *exclusive* license to use or enforce the Marks, and none of the relevant documents suggest the Russian Federation's intent to grant such an exclusive license. The complaint alleges that FTE is "the only entity with the right to use and dispose of the Marks." Am. Compl. ¶ 136, J.A. 284. But that FTE was the *only* licensee when it filed the complaint does not establish that it held an *exclusive* license, especially in light of the absence of any suggestion of exclusivity in either the Charter or the July 2002 decree. Moreover, the complaint does not appear to suggest that FTE could exclude the Russian Federation from using the Marks, since

32

FTE acknowledges that its rights are limited by the Russian Federation's "ultimate ownership."  Id.

### 4. Special Considerations Concerning Foreign Government Trademark Holders

Plaintiffs also contend that we should ignore these legal restrictions on FTE's rights to sue with regard to the Marks and instead look generally to what we discern to be the policies underlying statutory limitations on seeking damages for trademark infringement.  In particular, plaintiffs argue that policy interests in avoiding a multiplicity of suits are not implicated in this case because the Russian Federation has agreed by letter submitted to the District Court to be bound by this litigation.[14]  They urge further that comity considerations compel our court to afford the Russian Federation flexibility in determining how to protect its trademark rights and therefore to recognize FTE as an assign.

---

[14] In May 2011, presumably at FTE's request, the Deputy Head of the Federal Service for the Regulation of the Alcohol Market of the Russian Federation sent a brief letter to the District Court declaring that the Russian Federation had empowered FTE to bring this litigation and that "any final judgment on the merits of the claims for restoration of the trademark Stolichnaya brought by FTE . . . will be for the Russian Federation the final resolution of the court dispute with the defendants arising from the subject and grounds set out by FTE . . . in the relevant complaint (i.e., will have for the Russian Federation the same consequences as if the Russian Federation were a party to the abovementioned proceedings)."  Letter dated May 26, 2011 of V.V. Spirin to District Court, J.A. 458-59.

We discuss some of these concerns in greater detail below, in the context of the claim that FTE is the "legal representative" of the Russian Federation. We agree that, in certain contexts, such policy considerations, like the interest in avoiding a multiplicity of suits, may help to guide the analysis of whether a party has standing to sue under the Act. Cf. Phoenix of Broward, Inc. v. McDonald's Corp., 489 F.3d 1156, 1164 (11th Cir. 2007) (stating that the "risk of duplicative damages" is a factor to be considered in deciding whether a plaintiff has standing to bring a false advertising claim under Section 43 of the Lanham Act). But the Russian Federation is not a party to this litigation, and a brief *ad hoc* letter to the Court from the current Deputy Director of an administrative agency, asserting that the Federation as a whole will in the future consider itself bound by the outcome of this litigation does not, in our view, eliminate the risk of duplicative and conflicting litigation. And even if such a letter did begin to assuage those concerns, such policy interests could not override our statutory analysis here.

Further, we recognize that foreign states owning registered trademarks for commercial use may face a number of different and even challenging considerations in deciding how and when to enforce the rights protected by their internationally-deployed marks. We do not speculate why the Russian Federation settled on this particular arrangement with FTE as

34

the means of pursuing any rights it had in the Marks or in particular of asserting its United States rights in the Marks. We observe, however, that the Lanham Act – particularly in its provisions governing the "assignment" of trademarks and those relating to statutory standing to sue under the Act – sets out formal requirements aligned with the policies it is designed to promote. Had the Russian Federation effected a valid assignment here, FTE could sue under Section 32(1) as an "assign." As the relationship between the Russian Federation and FTE is now structured, however, it cannot, consistent with the Act.

B. FTE Is Not a "Legal Representative" of the Russian Federation for Purposes of the Act

We next consider whether FTE qualifies as a legal representative under the Act. The District Court concluded that FTE had to satisfy two conditions to achieve this status: "[A] party qualifies as a legal representative under Section 32(1) of the Lanham Act if the party has the authority to appear on behalf of the registrant/owner with respect to the registrant/owner's legal interests *and* the registrant/owner is unable or incapable of representing itself and enforcing its own rights." FTE III, 2011 WL 4005321, at *5 (emphasis in original). In this case, the District Court saw no adequate basis in the complaint or in the law for concluding that the

35

Russian Federation is legally incapable of representing itself, and therefore held that FTE did not qualify as a "legal representative." Id.

On appeal, FTE argues that the District Court interpreted the term "legal representative" too narrowly when it required that the real party in interest be legally incapable of representing itself. FTE submits that, as used in the Act, the phrase "legal representative" should be construed to include a "part[y] exercising another person's rights over a trademark on that person's behalf." Appellants' Br. 37.

The interpretation of the phrase "legal representative" in the Lanham Act context appears to present a question of first impression in the federal courts of appeal. After review of the language and structure of the Lanham Act and the district court opinions on point, and remaining mindful of relevant comity concerns, we conclude that the District Court here correctly interpreted the phrase. Because FTE has failed to allege facts plausibly showing that it qualifies as a "legal representative," it may not proceed in that capacity.

*1. Interpretation of the Phrase "Legal Representative"*

In its broadest usage, the phrase "legal representative" may refer simply to "[o]ne who stands for or acts on behalf of another." Black's Law Dictionary 1416 (9th ed. 2009) (defining "representative"). Often, however,

its meaning may be more precise. It may refer, for example, to an "executor or administrator" designated to act on behalf of a party who is incapable of acting on his own behalf, Rock-Ola Mfg. Corp. v. Filben Mfg. Co., 168 F.2d 919, 922 (8th Cir. 1948) (interpreting a contract including the phrase "legal representative"), or a trustee named to act on behalf of a party who, by law or agreement, is unauthorized to represent his own interests, see In re Casco Chem. Co., 335 F.2d 645, 651 (5th Cir. 1964) (concluding that a bankruptcy trustee is a "legal representative" for purposes of Federal Rule of Civil Procedure 60(b)). We must therefore look to the language and purposes of the Lanham Act to construe the phrase "legal representative" for present purposes.

The text and structure of the Lanham Act support defendants' interpretation. Section 32(1) expressly restricts standing to the "registrant" (which the Act expressly defines as the owner or, as we have said, his "legal representatives, predecessors, successors and assigns"). 15 U.S.C. § 1127. By contrast, Section 43 of the Act allows suits "by *any person* who believes that he or she is or is likely to be damaged" by the defendant's actions. 15 U.S.C. § 1125(a)(1) (emphasis added). To interpret the phrase "legal representative" broadly would permit both the registrant of the trademark and his putative "legal representative" to file separate suits against the same defendant for the

same infringing act – a result that seems inconsistent with Congress's stated intention to limit standing to the single "registrant" of the trademark under Section 32(1) as opposed to the broad standing afforded plaintiffs suing under Section 43. See Nat'l Licensing Ass'n v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244, 1255 (E.D. Wash. 2004) ("Although the term 'legal representative' is not defined by the Act, [a broad construction] would be inconsistent with the obvious intention to limit trademark infringement suits to those [who] have or had ownership interests in the trademark and the historically restrictive interpretation given to 'registrant.'").

Further, adopting FTE's interpretation of "legal representative" in this context – namely, that a "legal representative" includes "parties like FTE that have been given rights conferring control over trademarks ultimately owned by others," Reply Br. 1 – would raise constitutional concerns, thus militating against that interpretation. It is well established that a party must demonstrate "injury-in-fact" to have constitutional standing, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), and that such injury must be particular to the claim raised and the relief sought, e.g., Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008). Applying Lujan, we have held that an investment manager to whom investor-clients had given power-of-attorney and significant authority over investment

38

decisions lacked constitutional standing to file a securities fraud claim on the clients' behalf. W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008) ("Huff"). In Huff we recognized that, consistent with Supreme Court precedent in Sprint Communications Co. v. APCC Services, 554 U.S. 269 (2008), the "minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim," even if that title was not originally held by the plaintiff but was received through an assignment made by the initial holder of the claim. Huff, 549 F.3d at 108. We also recognized "a few . . . prudential exceptions to the 'injury-in-fact' requirement," id. at 109, and we explained that these "exceptions permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests," id.; see also Kowalski v. Tesmer, 543 U.S. 125, 130-31 (2004).

FTE's proposed interpretation of "legal representative," however, would extend standing to parties whose sole interest in a trademark-infringement action is a contractually-derived right to bring the claim, without owning the claim or having been assigned the claim, even if the actual trademark owner is capable of bringing suit on her own behalf. To ensure that our construction of the term "legal representative" avoids a

39

possible conflict with the requirements of Article III, we read it as requiring the trademark holder's legally-recognized inability to assert a claim for infringement.  Cf. Gollust v. Mendell, 501 U.S. 115, 125 (1991) (requiring plaintiff in shareholder-derivative suit to maintain a stake in the outcome of the litigation to avoid "serious constitutional doubt whether that plaintiff could demonstrate the standing required by Article III's case-or-controversy limitation on federal court jurisdiction").

FTE cites McClaskey v. Harbison-Walker Refractories Co., 138 F.2d 493 (3d Cir. 1943), in support of its argument for a broader reading of the phrase.  In McClaskey, the court examined whether, under the patent laws, a sheriff could serve as the "legal representative" of a patent holder, and therefore be empowered to transfer a patent through a creditors' sale of the patent holder's assets.  Id. at 494.  The court permitted the sheriff to go forward, concluding that "we can entertain no doubt that a patent may be reached and sold by a creditors' bill."  Id. at 495.  FTE argues that because the Third Circuit did not consider whether the patent holder was "unavailable to bring suit," the language "legal representative" in the context of the Lanham Act need not be read to include such a requirement.

But McClaskey does not support FTE's argument.  The court's holding there turned on the analogy it drew between the sheriff and a

40

"trustee specifically appointed" by a court for the purpose of disposing of a debtor's property. Id. at 500. As we recognized in Huff, a trustee's authority to bring suit on behalf of a trust (or otherwise represent a trust) flows from a special, legally-recognized obligation on the part of the trustee to protect the interests of the trust, which – like the debtor and patent holder in McClaskey – has become legally incapable of representing itself. See Huff, 549 F.3d at 109-10; see also Sprint, 554 U.S. at 287-88. In other words, even if we were bound by McClaskey, that opinion merely illustrates that a third party may serve as a "legal representative," even where the represented party is physically present, so long as the represented party is somehow disabled from asserting the rights at issue. Cf. Sprint, 554 U.S. at 288 (finding that party with "contractual obligation" to litigate claim has Article III standing in situation where party was *also assigned title* to the claim).[15]

Finally, FTE argues that the District Court's interpretation of "legal representative" offends international comity by "ignor[ing] the decisions made by a foreign sovereign to place trademarks and the commercial operations associated with them in the hands of a state enterprise." Appellants' Br. at 46. International comity is "a consideration

---

[15] For the reasons stated above, we also find unconvincing a district court case that FTE has identified holding to the contrary of our view. See Idaho Potato Comm'n v. Wash. Potato Comm'n, 410 F. Supp. 171 (D. Idaho 1976).

guiding courts, where possible, towards interpretations of domestic law that avoid conflict with foreign law." Linde v. Arab Bank, PLC, 706 F.3d 92, 111 (2d Cir. 2013). Considerations of comity are not, however, matters of "absolute obligation." Id. (internal quotation marks omitted). Rather, the concept of comity calls for an examination of "all of the relevant interests of all of the nations affected by the court's decision." Id. (emphasis omitted); see also Pravin Banker Assocs. v. Banco Popular Del Peru, 109 F.3d 850, 855 (2d Cir. 1997) ("[E]xtending comity . . . is only appropriate if it is consistent with United States government policy."). Here, concern for international comity does not overcome the United States' interests in enforcing its own trademark laws within its borders, or counsel the judicial creation of an exception to the Lanham Act's express requirements as consistently construed over time. Foreign sovereigns desiring to avail themselves of the protections of United States laws, particularly on commercial matters such as this, must observe United States prerequisites unless Congress directs otherwise.

We thus conclude that to serve as a "legal representative" entitled to bring suit under Section 32(1) on behalf of a trademark holder, a putative plaintiff must demonstrate *both* its legal authority to represent the owner and that the trademark holder is legally incapable of representing itself.

42

Applying that rule here, we observe that in neither the original nor the operative complaint did FTE allege that the Russian Federation was incapable of bringing this suit on its own behalf. <u>FTE III</u>, 2011 WL 4005321, at *5. Indeed, on appeal, FTE appears to acknowledge that the Russian Federation *could* appear in this suit; it now argues that the District Court should have permitted the Russian Federation "to join or be substituted into this action." Appellants' Reply Br. 27-28. Only an *amicus* brief submitted to this Court on behalf of the Russian Federation contends that the Russian Federation is unauthorized to appear in this litigation.[16] Noting this discordance between plaintiffs and *amicus*, we decline to accord significant weight to the Federation's argument both because it was not raised below and because an *amicus* brief is "not a method for injecting new issues into an appeal." <u>Universal City Studios, Inc. v. Corley</u>, 273 F.3d 429, 445 (2d Cir. 2001).[17]

---

[16] The "Institute of Legislation and Comparative Law under the Government of the Russian Federation" has moved for leave to file a brief as *amicus curiae* in support of plaintiffs-appellants, and has spoken to these questions in its *amicus* brief. That motion is GRANTED.

[17] In any event, as defendants argue, Russian law may not bar the Russian Federation from suing in its own capacity. The Russian Civil Code provides, among other things, that the owner of property "may demand the elimination of any violations of his right even though these violations are not combined with deprivation of possession." Russian Civil Code art. 304, SPA 78. Although the same chapter extends similar rights to parties who have claim to the property "by right of . . . operative management," <u>id.</u> art. 305, SPA 78-79, nothing in the Code appears to prohibit the true owner – in the case of the Marks, the Russian Federation – from bringing suit to assert its rights. Indeed, the alleged

43

In sum, since plaintiffs have failed sufficiently to allege that the Russian Federation is unable to appear in this litigation, FTE is not the Russian Federation's "legal representative" for the purpose of bringing suit under Section 32(1) of the Lanham Act.

C.    **The Russian Federation Has Not "Ratified" This Suit under Fed. R. Civ. P. 17 Sufficiently to Avoid Joinder**

FTE argues finally that even if it would ordinarily be unable to sue on its own for infringement of the trademarks at issue, its suit here should be permitted to proceed because the Russian Federation, as the real party in interest, has "ratified" the litigation by virtue of the May 2011 letter cited above.  We cannot agree.

Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest," but that

> [t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

To ratify a suit, the real party in interest must "(1) authorize continuation of the action and (2) agree to be bound by its result."  ICON Grp., Inc. v. Mahogany Run Dev. Corp., 829 F.2d 473, 478 (3d Cir. 1987); see also Charles

---

infringement may cause different damages to the Russian Federation than to FTE.

44

Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, 6A Fed. Prac. & Proc. § 1555 (3d ed. 2013).

Even accepting, based on the May 2011 letter (see supra, note 14) that the Russian Federation endorses FTE's authority to bring this suit and is willing to be bound by this litigation – propositions that we have questioned – plaintiffs cannot deploy Rule 17 to bypass the standing requirement of Section 32(1), which permits only "registrants" to bring actions for infringement of registered marks. The Rules Enabling Act, 28 U.S.C. § 2072(b), provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." Recently, a plurality of the Supreme Court instructed that we should consider a rule "substantive" for the purposes of the Rules Enabling Act if it "alters the rules of decision by which the court will adjudicate those rights." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1442 (2010) (plurality opinion) (alterations and internal quotation marks omitted). A rule is "procedural," in contrast, if it "governs only the manner and the means by which the litigants' rights are enforced." Id. (internal quotation marks omitted).

In this case, to extend standing to FTE through "ratification" under Rule 17(a) would do more than alter "the manner and the means" for

enforcing the Russian Federation's rights.  Id. at 1442.  To enlarge standing

in this way would extend the entitlement to sue to a new party that is

otherwise unauthorized under the statute at issue to bring suit to enforce

whatever rights it may claim.  Indeed, it would endow FTE with a right that

is not now available *at all* to non-registrants under Section 32(1).  Such a

decision would amount to an improper expansion of the substantive rights

provided by the Act.  Stichting Ter Behartiging Van De Belangen Van

Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407

F.3d 34, 49 (2d Cir. 2005) ("The procedural mechanisms set forth in Rule

17(a) for ameliorating real party in interest problems may not, under the

Rules Enabling Act, 28 U.S.C. § 2072(b), be employed to expand substantive

rights."); see also Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 488 (2d Cir.

2013) (noting that the availability of a class action mechanism under Rule 23

cannot create a right to sue but rather "*presupposes* the existence of a claim").

Our Court previously rejected an argument similar to that of FTE

in the context of the Copyright Act.  See Eden Toys, Inc. v. Florelee

Undergarment Co., 697 F.2d 27 (2d Cir. 1982), *superseded on other grounds

by* Fed. R. Civ. Proc. 52(a).  Because the copyright holder had purportedly

ratified the suit under Rule 17, the plaintiff in Eden Toys maintained that it

too had standing to pursue a copyright action even though it had not

46

registered the copyright. Declining to adopt that position, we explained:

"While Federal Rule of Civil Procedure 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, the Copyright Law is quite specific in stating that only the 'owner of an exclusive right under a copyright' may bring suit." Id. at 32 n.3 (citations omitted).[18] Similar reasoning requires us to reject FTE's contention here.

## D.    Dismissal of Remaining Claims

We also affirm the District Court's decision to dismiss Cristall's trademark infringement claims. In support of its asserted statutory standing to sue, Cristall alleges only that it obtained from FTE "the exclusive right to produce STOLICHNAYA vodka for sale in the United States." Am. Compl. ¶ 6, J.A. 257. Its damages may be different from FTE's for any proven infringement, but Cristall's interest in the Marks is entirely derivative of FTE's. Because FTE lacks statutory standing to bring this trademark infringement claim, so does Cristall. We thus affirm the District Court's

---

[18]    We also reject FTE's argument that we should remand the case to the District Court to permit FTE to add the Russian Federation as a plaintiff through "joinder" or "substitution" under Rule 17(a). FTE has had ample time since 2004, when the original complaint was filed, to join the Russian Federation as a party and has failed to do so. As early as July 2005, defendants argued that FTE's complaint should be dismissed for failure to join the Russian Federation. Further, as described above, our October 2010 summary order expressed concerns about whether the Russian Federation should be joined in this litigation, see 400 F. App'x at 614, and yet the Third Amended Complaint did not add the Russian Federation as a plaintiff. It is simply too late.

47

dismissal of Cristall's Claim 1 (federal trademark infringement) and Claim 2 (contributory trademark infringement).

As to Claim 3 (declaratory judgment of ownership), Claim 4 (rectification of the trademark register), and Claim 5 (cancellation of register under Section 37 of the Lanham Act), asserted by both FTE and Cristall, we conclude that the District Court properly held that, absent Lanham Act standing to sue for infringement, plaintiffs also lack standing to seek these remedies, which the District Court termed "ownership-bolstering" relief under the Lanham Act. See McCarthy § 30:110 ("Lanham Act § 37 assumes a properly instituted and otherwise jurisdictionally supportable action involving a registered mark.").

Finally, we affirm the District Court's decision not to exercise supplemental jurisdiction over plaintiffs' related state law misappropriation claim (Claim 6). We review that decision for abuse of discretion. Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010) (per curiam). Absent a basis for adjudicating the federal claims, it was well within the District Court's discretion to go no further.

## CONCLUSION

To summarize: for the reasons stated above, plaintiff FTE is neither an assign of the Russian Federation nor the Federation's legal

48

representative under the terms of the Lanham Act. It may not sue under the Act as an exclusive licensee, and the document plaintiffs tender as reflecting the Russian Federation's ratification of the suit does not entitle plaintiffs to proceed. Because Cristall's rights are derivative of FTE's, it too lacks standing under the Act.

The decision of the District Court is AFFIRMED.