# United States Court of Appeals for the Federal Circuit

---

**JAKE LATURNER, TREASURER OF THE STATE OF KANSAS, ANDREA LEA, IN HER OFFICIAL CAPACITY AS AUDITOR OF THE STATE OF ARKANSAS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2018-1509, 2018-1510

---

Appeals from the United States Court of Federal Claims in Nos. 1:13-cv-01011-EDK, 1:16-cv-00043-EDK, Judge Elaine Kaplan.

---

Decided: August 13, 2019

---

DAVID CHARLES FREDERICK, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, argued for all plaintiffs-appellees. Plaintiff-appellee Jake LaTurner also represented by SCOTT H. ANGSTREICH, KATHERINE COOPER, BENJAMIN SOFTNESS; JONATHAN BRETT MILBOURN, Horn Aylward & Bandy, LLC, Kansas City, MO.

DAVID THOMPSON, Cooper & Kirk, PLLC, Washington,

DC, for plaintiff-appellee Andrea Lea.  Also represented by
JOHN DAVID OHLENDORF, PETER A. PATTERSON; JOSEPH H.
MELTZER, MELISSA L. TROUTNER, Kessler Topaz Meltzer &
Check, LLP, Radnor, PA.

ALISA BETH KLEIN, Appellate Staff, Civil Division,
United States Department of Justice, Washington, DC, ar-
gued for defendant-appellant.  Also represented by MARK
B. STERN, JOSEPH H. HUNT.

GEORGE W. NEVILLE, Office of the Mississippi Attorney
General, Jackson, MS, for amici curiae State of Florida,
State of Mississippi, State of Georgia, State of Indiana,
State of Iowa, Commonwealth of Kentucky, State of Loui-
siana, Commonwealth of Pennsylvania, State of Ohio,
State of South Carolina, State of Rhode Island, State of
South Dakota.

————————————

Before DYK, CHEN, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge*:

During the Great Depression, President Franklin D.
Roosevelt signed legislation allowing the U.S. Department
of Treasury ("Treasury") to issue savings bonds, a type of
debt security designed to be affordable and attractive to
even the inexperienced investor.  Under longstanding fed-
eral law, savings bonds never expire and may be redeemed
at any time after maturity.  *See, e.g.*, 31 U.S.C.
§ 3105(b)(2)(A); 31 C.F.R. § 315.35(c).  Federal law also lim-
its the ability to transfer bonds.  31 C.F.R. § 315.15.  Kan-
sas and Arkansas (the "States") passed so-called "escheat"
laws providing that if bond owners do not redeem their sav-
ings bonds within five years after maturity, the bonds will
be considered abandoned and title will transfer (i.e., "es-
cheat") to the state two or three years thereafter.  Kan.
Stat. Ann. §§ 58-3935(a)(16), 58-3979(a) (2000); Ark. Code
Ann. § 18-28-231(a)–(b) (2015).

Pursuant to these escheat laws, the States sought to redeem a large but unknown number of bonds, estimated to be worth hundreds of millions of dollars. When Treasury refused, the States filed suit in the Court of Federal Claims ("Claims Court"). The Claims Court agreed with the States, holding that Treasury must pay the proceeds of the relevant bonds—once it has identified those bonds—to the States. The cases were certified for interlocutory appeal to this court.

We reverse for two independent reasons. First, we hold that federal law preempts the States' escheat laws. That means that the bonds belong to the original bond owners, not the States, and thus the States cannot redeem the bonds. Second, even if the States owned the bonds, they could not obtain any greater rights than the original bond owners, and, under Federal law, 31 C.F.R. § 315.29(c), a bond owner must provide the serial number to redeem bonds six years or more past maturity, which includes all bonds at issue here. Because the States do not have the physical bonds or the bond serial numbers, Treasury properly denied their request for redemption.

### BACKGROUND

This case concerns the ability of states to acquire U.S. savings bonds through escheat, the centuries-old right of the states to "take custody of or assume title to abandoned personal property." *Delaware v. New York*, 507 U.S. 490, 497 (1993). A savings bond is a contract between the United States and the bond owner, and Treasury regulations are incorporated into the bond contract. *See Treasurer of New Jersey v. U.S. Dep't of the Treasury*, 684 F.3d 382, 387 (3d Cir. 2012), *cert. denied*, 569 U.S. 1004 (2013).

Treasury "regulations do not impose any time limits for bond owners to redeem the[se] savings bonds." *Id.* at 388; *see also* 31 U.S.C. § 3105(b)(2)(A) (authorizing Treasury to adopt regulations providing that "owners of savings bonds may keep the bonds after maturity"). In addition, Treasury

regulations provide that savings bonds are generally "not transferable and are payable only to the owners named on the bonds." 31 C.F.R. § 315.15. When the sole owner of a bond dies, "the bond becomes the property of that decedent's estate." 31 C.F.R. § 315.70(a). Federal law imposes no time limit on the redemption of savings bonds, and numerous savings bonds in the country have matured but have not yet been redeemed by their owners. Generally, in order to redeem bonds not in the physical possession of the owner—for example, bonds that have been lost or destroyed—the owner must supply the serial numbers of the bonds to Treasury. 31 C.F.R. §§ 315.25, 315.26(a), 315.29(c). The States do not have the serial numbers of the bonds in question.

This case is related to an earlier litigation that resulted in a decision by the Third Circuit. In the 2000s, several states attempted to acquire the proceeds of unredeemed savings bonds through so-called "custody escheat" laws. *See New Jersey*, 684 F.3d at 389–90. These laws provided that if bond owners with last known addresses in the state did not redeem their bonds within a certain time after maturity (such as five years), the bonds would be deemed abandoned property. The state could then obtain legal custody of (but not title to) the bonds. When several states asked Treasury to redeem bonds obtained through these custody escheat laws, Treasury refused. Treasury explained that for the bonds to be paid, a state "must have possession of the bonds" and "obtain title to the individual bonds"—neither of which the states had. J.A. 507 (2004 letter to North Carolina); *accord* J.A. 509 (letter to Illinois); J.A. 511 (letter to D.C.); J.A. 513 (letter to Kentucky); J.A. 515 (letter to New Hampshire); J.A. 517 (letter to South Dakota); J.A. 519 (letter to Connecticut); J.A. 521 (letter to Florida).

A number of states filed suit in the District of New Jersey, seeking an order directing the government to pay the bond proceeds. The district court upheld Treasury's denial

of payment, holding that the states' custody escheat laws were preempted. *See New Jersey*, 684 F.3d at 394. The Third Circuit affirmed, explaining that the states' laws "conflict[ed] with federal law regarding United States savings bonds in multiple ways." *Id.* at 407. The court reasoned that unredeemed bonds are "not 'abandoned' or 'unclaimed' under federal law because the owners of the bonds may redeem them at any time after they mature." *Id.* at 409. "The plaintiff States' unclaimed property acts, by contrast, specify that matured bonds are abandoned and their proceeds are subject to the acts if not redeemed within a [certain] time period" after maturity. *Id.* at 407–08. "There simply is no escape from the fact that the Federal Government does not regard matured but unredeemed bonds as abandoned even in situations in which [state law] would do exactly that." *Id.* at 409. However, the Third Circuit declined to address whether the outcome would be different if states obtained *title* to savings bonds, as opposed to mere custody. *Id.* at 413 n.28 ("We simply are not faced with that possibility and thus we do not address it.").

After the *New Jersey* litigation, Kansas and Arkansas acted to obtain title to the bonds using "title escheat" laws—precisely the circumstance the Third Circuit's *New Jersey* decision did not reach. Kansas's title escheat law provides that a savings bond will be considered "abandoned" if it is not redeemed within five years of maturity. Kan. Stat. Ann. § 58-3935(a)(16). If the bond remains unredeemed for three more years—that is, for a total of eight years after maturity—Kansas may obtain a state court judgment that title to the bond has escheated to the state. *Id.* § 58-3979(a). Arkansas's law is similar, providing that savings bonds will be considered abandoned five years after maturity and that the state can obtain title to the bonds two years after that. Ark. Code Ann. § 18-28-231(a)–(b).

Kansas and Arkansas obtained state court judgments purporting to give them title to the category of bonds deemed abandoned under these title escheat laws—that is,

all unredeemed bonds that were sufficiently past maturity and were registered to owners with last known addresses in Kansas or Arkansas.[1]  *See* J.A. 251 (Kansas); J.A. 1244 (Arkansas).  These bonds were not in the States' possession.[2]  Kansas and Arkansas estimated that the allegedly abandoned bonds were worth $151.8 million and $160 million, respectively.

The States then attempted to redeem these bonds, asking Treasury to redeem bonds whose registered owners had last known addresses in the state, relying on its general authority to escheat debts owed to individuals whose last known addresses were in the state.  *See generally Texas v. New Jersey*, 379 U.S. 674, 680–81 (1965) (holding that as to abandoned intangible property—there, various debts— "the right and power to escheat the debt should be accorded to the State of the creditor's last known address").[3]

---

[1]    For Kansas, the relevant bonds are 40-year Series E bonds issued between 1941 and December 31, 1961; 30-year Series E bonds issued between 1965 and December 31, 1972; and Series A–D, F, G, H, J, and K bonds issued before December 31, 1972.  J.A. 245.  For Arkansas, the relevant bonds are "all unredeemed series A through D, F, G, J, and K bonds, and all series E and H bonds that were issued on or before October 16, 1978."  J.A. 1243.

[2]    The States also escheated and asked Treasury to redeem a much smaller number of bonds that they did possess.  Treasury did so, relying on its authority under 31 C.F.R. § 315.90 to waive its other regulations.  *See* Regulations Governing United States Savings Bonds, 80 Fed. Reg. 37,559, 37,3560 (U.S. Dep't of Treasury July 1, 2015).  The bonds in the States' possession are not at issue in this case.

[3]    Below, the government challenged the States' authority to escheat based on the last known address of the registered bond owners, since some bond owners may have moved out of state.  The government does not make this

Treasury declined, stating that "[u]nless some exception or waiver in [its] regulations applies, Treasury is only authorized to redeem a savings bond to the registered owner," J.A. 368, who retains the right "to redeem their savings bonds at any time, even after maturity," J.A. 369.

The States sued for damages under the Tucker Act, 28 U.S.C. § 1491, alleging that the States were the owners of the absent bonds and that the government had breached the terms of the savings-bonds contracts by refusing to redeem the bonds. On cross-motions for summary judgment, the Claims Court sided with the States, holding that Treasury was liable to the States and had an obligation to identify the absent bonds. The Claims Court reasoned that there was no preemption because "federal law itself (i.e., 31 C.F.R. § 315.20(b)) requires Treasury to recognize claims of ownership based on title-based escheatment statutes." *Laturner v. United States*, 133 Fed. Cl. 47, 71 (2017).

The court also concluded that the States have the "right[] as an owner of the bonds to make a claim for their proceeds based on the theory that they are 'lost.'" *Id.* at 70. It determined that "Treasury breached the [bond] contract when it refused to provide [the States] with information about the bonds and demanded that [the States] produce the bond certificates as a condition of redeeming their proceeds." *Id.* at 65. Thus, the Claims Court held that the States were "entitled to receive from the government the information necessary to allow it to make a request to redeem the bonds," including the serial numbers of the absent bonds. *Id.* at 77; *see also id.* at 70; *Laturner v. United States*, 135 Fed. Cl. 501, 505 (2017).

---

argument on appeal, and we assume without deciding that the States have the authority—absent preemption—to escheat savings bonds based on the last-known address of the registered owner.

The Claims Court certified its summary judgment orders for interlocutory appeal under 28 U.S.C. § 1292(d)(2),[4] noting that identifying the absent bonds would be time-intensive and expensive and that there are eight other pending cases in which other states are asserting similar claims. The court also stayed the proceedings pending appeal.

We granted the government's petitions for leave to appeal and consolidated the appeals. We have jurisdiction under 28 U.S.C. § 1292(d)(2).

DISCUSSION

I

We first address whether, as the government contends, the Treasury regulations governing U.S. savings bonds preempt the States' escheat laws regarding unredeemed savings bonds. The parties assume that the regulations in effect before December 24, 2015, are the relevant regulations.[5] We proceed on that assumption.

---

[4]    The language of section 1292(d)(2) "is virtually identical to 28 U.S.C. § 1292(b) . . . which governs interlocutory review by other courts of appeals." *United States v. Connolly*, 716 F.2d 882, 883 n.1 (Fed. Cir. 1983) (en banc).

[5]    The government's position is that the relevant regulations are those "that were in effect at the time the requests were made"—that is, in May 2013 (for Kansas) and in November 2015 (for Arkansas), respectively. Gov't Open. Br. at 7 n.3. (There was no change in the regulations between these dates.) The Claims Court indicated that it was applying the regulations in effect when the States filed their complaints—that is, in December 2013 (for Kansas) and in November 2015 (for Arkansas), respectively. The States' position is somewhat unclear, though they agree that the pre-amendment regulations apply to this case. Given the parties' agreement as to the relevant regulations, we

A

The Constitution limits state sovereignty "by granting certain legislative powers to Congress while providing in the Supremacy Clause that federal law is the 'supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018) (quoting U.S. Const. art. VI, cl. 2) (internal citation omitted). "This means that when federal and state law conflict, federal law prevails and state law is preempted." *Id.* The Supreme Court has "identified three different types of preemption—'conflict,' 'express,' and 'field,' but all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Id.* at 1480 (internal citation omitted). For example, in *Arizona v. United States*, 567 U.S. 387 (2012), the Court held that federal statutes "provide a full set of standards governing alien registration" and therefore "foreclose any state regulation in the area." *Id.* at 401. In *Murphy*, the Court elaborated that "[w]hat this means is that the federal registration provisions not only impose federal registration obligations on aliens but also confer a federal right to be free from any other registration requirements." 138 S. Ct. at 1481. Authorized Federal regulations can preempt just as federal statutes can. *See Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

The Supreme Court's decision in *Free v. Bland*, 369 U.S. 663 (1962) illustrates how preemption applies in the context of the U.S. savings bond program. In that case, Treasury regulations provided that when one bond owner

assume that the regulations in effect at the time the bonds were issued were not materially different.

died, the surviving co-owner (there, the decedent's husband) became the *sole* owner of the bond. *Id.* at 664–65. Under Texas state community property laws, however, the principal beneficiary under the decedent's will (there, the decedent's son) was entitled to a one-half interest in the bonds—despite not being a co-owner of the bond under Treasury regulations. *Id.* The Court held that the state law was preempted because it prevented bond owners "from taking advantage of the survivorship provisions" of the Treasury regulations. *Id.* at 669–70. The Court reasoned that "Federal law of course governs the interpretation of the nature of the rights and obligations created by the Government bonds," *id.* at 669–70 (quoting *Bank of Am. Tr. & Sav. Ass'n v. Parnell*, 352 U.S. 29, 34 (1956)), and a state may not "fail[] to give effect to a term or condition under which a federal bond is issued," *id.* at 669. In other words, Treasury regulations conferred a right on bond holders which Texas state law impermissibly restricted.

Here there is a similar conflict between state and Federal law. Federal law confers on bond holders the right to keep their bonds after maturity. Congress specifically authorized Treasury to prescribe regulations providing that "owners of savings bonds may keep the bonds after maturity," 31 U.S.C. § 3105(b)(2)(A), as well as regulations setting forth "the conditions, including restrictions on transfer, to which they will be subject," *id.* § 3105(c)(3), and the "conditions governing their redemption," *id.* § 3105(c)(4). Treasury regulations impose no time limit on the redemption of savings bonds. *See, e.g.*, 31 C.F.R. § 315.35(c) ("A series E bond will be paid *at any time* after two months from issue date at the appropriate redemption value . . . ." (emphasis added)); *New Jersey*, 684 F.3d at 409 ("[U]nder federal law . . . the owners of the bonds may redeem them at any time after they mature . . . ."). And 31 C.F.R. § 315.15 provides that "[s]avings bonds are not transferable and are payable only to the owners named on

the bonds, except as specifically provided in these regulations and then only in the manner and to the extent so provided." *See also id.* § 315.5(a) (providing that savings bonds "are issued only in registered form" and "must express the actual ownership of" the bond, and that "registration is conclusive of ownership" with limited exceptions). Federal law thus confers on bond holders "a federal right to engage in certain conduct"—the right to keep their bonds after maturity without the bonds expiring—"subject only to certain (federal) constraints." *See Murphy,* 138 S. Ct. at 1480.

The States' escheat laws on the other hand impermissibly restrict the bond holder's right to retain ownership of the bonds. Under the escheat laws, if bond holders do not redeem their bonds promptly enough (as decided by the States), they lose ownership and the bonds will transfer to the state. Absent Federal law authorizing such a state law restriction, the result is clear: "the federal law takes precedence and the state law is preempted." *Id.*

B

The States do not contest that Federal law would preempt their escheat laws absent Federal authorization for the state legislation. But they contend that here there is no conflict between Federal law and the States' escheat laws because Treasury regulations themselves permit the transfer of ownership under escheat laws. They rely on 31 C.F.R. § 315.20(b), which provides that "Treasury will recognize a claim [of bond ownership by a third party] . . . if established by valid, judicial proceedings, but only as specifically provided in this subpart" (emphasis added)— i.e., subpart E (§§ 315.20–23). The States contend that their escheat proceedings constitute "valid, judicial proceedings" under this regulation. Although the Third Circuit in the *New Jersey* litigation did not decide the question before us, the States quote language from the Third Circuit's opinion that "as provided in the federal regulations

and as recognized by the Treasury, third parties, including the States, may obtain ownership of the bonds—and consequently the right to redemption—through 'valid[] judicial proceedings,' 31 C.F.R. § 315.20(b)."  684 F.3d at 412–13 (alteration in original).

The States also argue that Treasury has made repeated statements interpreting § 315.20(b) to allow escheat-based claims so long as the state has title (which the States allegedly have here).  The States rely on two sets of statements: first, statements Treasury made in denying past escheat claims by various states; and second, portions of Treasury's briefing in the *New Jersey* litigation.  Treasury responds that its prior statements are entirely consistent with its present position that it "considers escheat-based redemption claims as an exercise of its discretionary waiver authority under provisions such as 31 C.F.R. § 315.90, rather than under § 315.20(b)," and that it grants such a waiver only when a state has both title <u>and possession</u>.  Gov't Open. Br. at 16 & n.8.

Paradoxically, the States disclaim any reliance on *Auer* deference, but offer no other basis for deferring to Treasury's supposed interpretation of its regulations.  In any event, there is no basis for *Auer* deference here.  As the Supreme Court recently clarified, "a court should not afford *Auer* [*v. Robbins,* 519 U.S. 452 (1997)] deference unless the regulation is genuinely ambiguous," *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019), even after applying "all the 'traditional tools' of construction," *id.* (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)).  Even if the regulation is genuinely ambiguous, *Auer* deference is not appropriate unless "an independent inquiry into . . . the character and context of the agency interpretation" shows that the interpretation (1) constitutes the agency's "authoritative" or "official position," (2) implicates the agency's "substantive expertise," and (3) reflects the agency's "fair and considered judgment" of the issue.  *Id.* at 2416–18.

Although we are dubious that the statements here (particularly those made in the *New Jersey* briefs) reflect Treasury's "fair and considered judgment" on the question of whether 31 C.F.R. § 315.20(b) requires Treasury to recognize escheat claims, *id.* at 2417 & n.6, we need not decide that question. Nor need we decide whether Treasury's earlier interpretations were overridden by its more recent interpretations of the regulations. That is so because using "the 'traditional tools' of construction," the Treasury regulations are not "genuinely ambiguous," and thus *Auer* deference is inappropriate. *Id.* at 2415.

The regulation on which the States rely, § 315.20(b), states that Treasury will recognize the "judicial proceedings" "only as specifically provided in this subpart" (emphasis added). The only judicial proceedings specifically provided in the subpart are those for bankruptcy (§ 315.21), divorce (§ 315.22), and proceedings finding a person to be entitled to the bond "by reason of a gift causa mortis" (a gift made in contemplation of impending death) "from the sole owner" (§ 315.22). Escheat proceedings are not mentioned. Accordingly, the general prohibition on transfers of ownership contained in § 315.15 applies.

The States advance a contrary interpretation of the regulation, arguing that § 315.20(b)'s "only as specifically provided in this subpart" limitation refers to "the *manner* in which judicial proceedings will be recognized, not the *sorts* of proceedings that will be recognized." Kansas Resp. Br. at 31 (emphasis in original). This is not a tenable reading of the regulation. A different provision, § 315.23, already specifies how to prove the validity of a proceeding, such as by providing certified copies of the judgment. The "only as specifically provided in this subpart" language in § 315.20(b) plainly refers to the types of judicial proceedings that will be recognized.

The States also assert that § 315.20(a), not § 315.20(b), exclusively defines the transfers of ownership that

Treasury will not recognize. Section 315.20(a) states that Treasury "will not recognize a judicial determination that gives effect to an attempted voluntary transfer inter vivos of a bond" or that "impairs the rights of survivorship conferred by these regulations upon a coowner or beneficiary." Contrary to the States' argument, § 315.20(a) simply lists additional transfers that Treasury will not recognize. It hardly suggests that all other transfers are valid.

In short, we reject the States' contention that Treasury regulations permit the transfer of ownership under escheat laws. To the contrary, the plain language of the regulations confers on bond holders the right to retain their bonds *without* losing ownership if they do not redeem the bonds within a time limit set by the States.

While we do not rely on it, we note that Treasury in December 2015 confirmed this interpretation of its regulation when it amended § 315.20 to specifically provide that "[e]scheat proceedings will not be recognized under this subpart." Treasury also added a new regulation, section 315.88, providing that Treasury "will not recognize an escheat judgment that purports to vest a State with title to a bond that the State does not possess"—as is the case here— "or a judgment that purports to grant the State custody of a bond, but not title"—as was the case in the *New Jersey* litigation.[6]

---

[6]    In *Estes v. U.S. Dept' of the Treasury*, the states argued that the amended regulations were arbitrary and capricious because they represented a change in policy without an explanation for that change. *See* 219 F. Supp. 3d 17, 27–28; *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) ("Agencies are free to change their existing policies so long as they provide a reasoned explanation for the change.") The district court rejected this argument, holding that the amended regulation was not a policy change

## II

There is an additional reason that the States cannot prevail. The States concede that even if Federal law recognized them as the rightful bond owners, they could have no greater rights than the original bond owners. *See* Oral Arg. at 35:45–36:00. In general, a bond owner must "present the bond to an authorized paying agent for redemption." 31 C.F.R. § 315.39(a). The States cannot do so here since they do not have physical possession of the bonds.[7] However, the States advance several reasons for why they need not present the physical bonds for redemption.

## A

The States maintain that they need not present the physical bonds because the bonds should be considered "lost" and the States can meet the requirements for redeeming lost bonds. The Claims Court agreed. Under 31 C.F.R. § 315.25, "[r]elief, by the issue of a substitute bond or by payment, is authorized for the loss . . . of a bond after receipt by the owner." When a bond is lost, "the savings bond must be identified by serial number and the

---

but rather "a clarification of prior guidance" and "simply elaborated on the standards" followed by Treasury before. *Estes,* 219 F. Supp. 3d at 27–31. The court also rejected the states' Constitutional challenges (based on the Appointments Clause and Tenth Amendment) to the amended regulations, *id.* at 37–41, and the States do not renew those arguments here.

[7]   As discussed above, there is no issue here regarding bonds that the States possess. Treasury allowed the States to redeem such bonds, invoking its authority under 31 C.F.R. § 315.90 to waive the provisions that only the original bond owner may redeem the bond, *e.g.*, 31 C.F.R. § 315.15. And when a state possesses the bonds, it is of course able to present the physical bonds for payment.

applicant must submit satisfactory evidence of the loss."
*Id.* There is an exception to the serial number require-
ment: "If the bond serial number is not known, the claim-
ant must provide sufficient information to enable" the
government "to identify the bond by serial number." 31
C.F.R. § 315.26(b). But if an owner seeks to redeem the
bond "six years or more after the final maturity of a savings
bond"—which applies to all bonds at issue here—"[n]o
claim . . . will be entertained, unless the claimant supplies
the serial number of the bond." 31 C.F.R. § 315.29(c). In
other words, the regulations foreclose the option of redeem-
ing a bond by providing other identifying information when
the bonds at issue are six years or more past maturity.

The government contends that the bonds here are not
"lost" within the meaning of the regulations, because here
there is no evidence that the bonds have been lost by the
original owners. We need not resolve this issue, because
even if the bonds here are considered lost, the States do not
have the bond serial numbers as required by 31 C.F.R.
§ 315.29(c).

B

Kansas argues that it is entitled to relief under the reg-
ulation governing "nonreceipt of a bond," 31 C.F.R.
§ 315.27, which does not require the bond owner to provide
the serial number. That regulation provides that "[i]f a
bond issued on any transaction is not received, the issuing
agent must be notified as promptly as possible and given
all information available about the nonreceipt." *Id.* "If the
application is approved, relief will be granted by the issu-
ance of a bond bearing the same issue date as the bond that
was not received." *Id.* This regulation does not apply here.
It is directed at the situation where an individual pur-
chases a bond but does not receive it—in other words,
where Treasury fails to deliver the bond to the original
owner. Indeed, Arkansas (unlike Kansas) recognizes that
this provision governs "those cases where a bond 'is not

received' by the original owner in the first place"—which is not the situation here. Arkansas Resp. Br. at 50.

C

Arkansas contends that if it can properly claim ownership of the bonds under 31 C.F.R. § 315.20—an argument rejected earlier in part I—it need not present the physical bonds or the bond serial numbers. There is no basis for this contention in the regulations. The provisions in 31 C.F.R. §§ 315.20–23 lay out requirements for establishing ownership when ownership transferred due to proceedings such as bankruptcy or divorce. They also establish certain circumstances in which Treasury will not recognize the transfer of ownership, such as when judicial proceedings are still pending. *See* 31 C.F.R. § 315.20(c) (stating that Treasury "will not accept a notice of an adverse claim or notice of pending judicial proceedings"). But the general requirements for redeeming a bond—such as presenting the physical bond, or, if the bond is lost, providing the serial number—still apply, and the States cannot meet them.[8]

---

[8]  Alternatively, Arkansas argues that since Treasury has exercised its waiver authority under 31 C.F.R. § 315.90(a) to allow states to redeem bonds where the states had both title and possession, its refusal to extend such a waiver here "violates its duty of good faith and fair dealing" implicit in the bond contract. Arkansas Resp. Br. at 53–54. We disagree. When a state has possession and title, Treasury has been willing to waive the prohibition on transfers of ownership and the requirement that only the registered owner may redeem a bond. *See* 31 C.F.R. § 315.15. But Treasury does *not* waive the requirement that the owner must present the physical bond (or, if applicable, the bond serial number). *See* 31 C.F.R. §§ 315.39(a), 315.25, 315.29(c). Treasury's refusal to waive those requirements here does not violate the provisions of the bond

D

Finally, both States argue that even if they must provide the bond serial numbers, the government has the obligation under the Freedom of Information Act ("FOIA") to disclose those serial numbers to the States, or, alternatively, that the government through discovery may be compelled to ascertain the serial numbers.

The States suggest that the government is obligated to provide serial numbers in response to a FOIA request, citing 31 C.F.R. § 323.2(b). But that regulation merely restricts <u>who</u> may obtain information through a FOIA request, providing that securities records "will ordinarily be disclosed <u>only</u> to the owners of such securities." *Id.* (emphasis added). It does not specify what information may be obtained and under which circumstances. In any event, whether the States have the right to obtain serial numbers of bonds through a FOIA request is not before us. Kansas filed such a FOIA request, which Treasury denied.[9] Kansas did not pursue further review in court, which it would

---

contract, and the "implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)).

[9]    Treasury's denial of Kansas's FOIA request rested on two grounds. First, Treasury stated that it lacked responsive records because its records are not compiled or searchable by the state listed in the bond's registration. Second, it determined that disclosing bond records to someone other than the registered owner would, under the circumstances, constitute an unwarranted invasion of personal privacy pursuant to FOIA Exemption 6. *See* 5 U.S.C. § 552(b)(6).

have had to seek in district court. *See* 5 U.S.C. § 552(a)(4)(B). The Claims Court therefore properly declined to rely on FOIA, noting that it has no jurisdiction over denials of FOIA requests. *See Laturner*, 135 Fed. Cl. at 505 n.3.

Alternatively, the States argue that they should be entitled to obtain the bond serial numbers through the ordinary discovery process. While the Claims Court opinion is not entirely clear, it appears to have agreed. However, the court recognized in certifying its orders for interlocutory appeal that "the burdens of discovery going forward (both in terms of effort and expense) will undoubtedly be formidable given the state of Treasury's savings bond records." J.A. 5. Treasury's bond records are not digitized and therefore not computer-searchable. Nor are they organized by the state listed in the bond's registration. For that reason, locating the serial numbers of the bonds would require manually searching approximately 3.8 billion savings bonds records to identify those whose registered owners had an address in Kansas or Arkansas. Treasury estimates that locating these bonds here would cost $100 million and take over 2,000 hours of employee time. J.A. 817.

We need not decide whether locating the bond serial numbers would be unduly burdensome such that it would be an abuse of discretion to grant the States' discovery request. That is so because requiring the government to disclose the bond serial numbers as a matter of discovery would impermissibly circumvent the requirement in 31 C.F.R. § 315.29(c) that the bond owner provide the serial number to redeem a bond six or more years past maturity. Adopting the States' position would effectively eliminate this requirement, as a bond holder could always file suit and then obtain the serial number through discovery. This would contravene the principle that the Federal Rules of Civil Procedure cannot "enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423

(2010) (Stevens, J., concurring) ("A federal rule . . . cannot govern a particular case in which the rule would displace a state law that . . . functions to define the scope of the state-created right."); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503–04 (2001) (noting that if state law granted a particular right, "the federal court's extinguishment of that right" through application of a Rule of Civil Procedure "would seem to violate this limitation" contained in § 2072(b)).

The Second Circuit's decision in *Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62 (2d Cir. 2013), provides an illustration. There, the plaintiff sought to sue for trademark infringement under the Lanham Act, but could not meet the Lanham Act's statutory standing requirement, which "permits only 'registrants' to bring actions for infringement of registered marks." *Id.* at 83. The plaintiff was not the registrant but argued that it could nonetheless bring suit because the real party in interest had ratified the plaintiff's suit as permitted by Federal Rule of Civil Procedure 17(a). The Second Circuit held that the corporation could not use Rule 17(a) "to bypass the standing requirement" in the Lanham Act. *Id.* at 83. The court reasoned that "[t]o enlarge standing [by applying Rule 17] would extend the entitlement to sue to a new party that is otherwise unauthorized under the" Lanham Act, and thus "amount to an improper expansion of the substantive rights provided by the Act." *Id.*; *see also Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 n.3 (2d Cir. 1982) ("While [Federal Rule of Civil Procedure 17(a)] ordinarily permits the real party in interest to ratify a suit brought by another party, the Copyright Law is quite specific in stating that only the 'owner of an exclusive right under a copyright' may bring suit." (internal citation omitted) (quoting 17 U.S.C. § 501(b) (1980))), *superseded on other grounds by* Fed. R. Civ. P. 52(a).

Similarly, here the States cannot use the discovery rules to bypass the serial number requirement of the

Treasury regulations.  Allowing the States to do so would improperly expand the substantive right to payment under the Treasury regulations, since it would extend the right to receive payment to circumstances in which the claimant would otherwise <u>not</u> be entitled to payment.

This is also a situation in which the bond holders have agreed to the requirements of the Treasury regulations as part of the bond contract.  It is well-established that "before suit has been filed, before any dispute has arisen," parties may waive various rights through contract—even those based in the Constitution, such as due process rights to notice and a hearing.  *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 184–85 (1972); *see also Herman Miller, Inc. v. Thom Rock Realty Co.*, 46 F.3d 183, 189 (2d Cir. 1995) (enforcing contract provision waiving right to a jury trial).  It follows that even if bond holders might otherwise be entitled to certain discovery, they may limit that right by agreeing to the terms of the bond contract, which require them to present the physical bonds or the bond serial numbers for payment.

## III

Finally, the States assert that Treasury's denial of their redemption requests was a "taking" of their property.  The essence of a takings claim is that the government "takes possession of an interest in property for some public purpose" and must therefore "compensate the former owner."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).  But here the government has not taken possession of any interest in the bonds.  The bonds remain the property of the original owners, who under Treasury regulations retain the right to redeem the bonds at any time.  The States simply do not have a property interest in the bonds, and, even if they did, they can have no greater property interest than the original owners.  *See A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014) ("[T]he existence of a valid

property interest is necessary in all takings claims." (quoting *Wyatt v. United States*, 271 F.3d 1090, 1097 (Fed. Cir. 2001)).  Because no property interest of the States has been impaired, there can be no taking.

## CONCLUSION

Because the States' escheat laws attempt to transfer ownership of the bonds to the States in contravention of Treasury regulations, they are preempted by Federal law. In addition, because the States lack the serial numbers or possession of the bonds at issue, they could not redeem the bonds even if they validly owned them.

We reverse the judgment below and remand with instructions to enter summary judgment for the government.

## REVERSED

## COSTS

No costs.