*Arbeeny v. Cuomo*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand twenty-five.

Present:
> JOSÉ A. CABRANES,
> MICHAEL H. PARK,
> BETH ROBINSON,
> *Circuit Judges.*

_____

DANIEL N. ARBEENY, as the Administrator for the Estate of NORMAN ARBEENY individually and on behalf of all others similarly situated, and SEAN S. NEWMAN,

> *Plaintiffs-Appellants*,

> v.                                                                24-2856

ANDREW M. CUOMO, MELISSA DEROSA, HOWARD A. ZUCKER, M.D., NORTHWELL HEALTH, INC., MICHAEL DOWLING, GREATER NEW YORK HOSPITAL ASSOCIATION, KENNETH RASKE,

> *Defendants-Appellees.**

_____

_____

* The Clerk of Court is respectfully directed to amend the caption accordingly.

FOR PLAINTIFFS-APPELLANTS:       MICHAEL S. KASANOFF, Michael S. Kasanoff,
                                 LLC, Matawan, NJ; JAMES J. BUTERA, Meeks,
                                 Butera and Israel PLLC, Washington, DC;
                                 Jonna M. Spilbor, Jonna Spilbor Law, Fishkill,
                                 NY.

FOR DEFENDANT-APPELLEE           RITA M. GLAVIN, Lee S. Gayer, Alexander S.
ANDREW M. CUOMO:                 Holland, Thomas P. Halpern, Glavin PLLC,
                                 New York, NY.

FOR DEFENDANT-APPELLEE           GREGORY MORVILLO, Morvillo PLLC, New
MELISSA DEROSA:                  York, NY, Sarah A. Sulkowski, Gelber +
                                 Santillo Law, New York, NY; Anthony M.
                                 Grupposo, Grupposo Legal, Chatham, NJ.

FOR DEFENDANT-APPELLEE           NELSON A. BOXER, Caelyn Stephens, Petrillo
HOWARD A. ZUCKER:                Klein + Boxer, New York, NY.

FOR DEFENDANTS-APPELLEES         ROBERT A. SPOLZINO, Abrams Fensterman,
NORTHWELL HEALTH, INC.           LLP, White Plains, NY.
AND MICHAEL DOWLING:

FOR DEFENDANTS-APPELLEES         JEREMY M. CREELAN, Stephen L. Ascher,
GREATER NEW YORK                 Elizabeth A. Edmondson, Jenner & Block
HOSPITAL ASSOCIATION             LLP, New York, NY.
AND KENNETH RASKE:

Appeal from the judgment entered on January 10, 2025 of the United States District Court for the Eastern District of New York (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On March 25, 2020, amid fears that Covid-related hospitalizations would exceed hospitals' capacity, the New York State Department of Health ("NYSDOH") promulgated an advisory prohibiting nursing homes from denying admission "solely based on a confirmed or suspected diagnosis of COVID-19." App'x at 399. On April 7, 2020, the NYSDOH promulgated a

2

similar advisory to adult care facilities. These two advisories (the "Directives") were controversial, with critics warning that transferring asymptomatic patients from hospitals without testing would increase the risk of transmission in long term care facilities. The NYSDOH repealed the Directives on May 10, 2020, but by that time, over 9,000 Covid-positive patients had been transferred to long term care facilities, and over 15,000 patients in nursing homes and assisted living facilities ultimately died of Covid.

Plaintiffs are children of residents of nursing homes and adult care facilities who died after contracting Covid and after the NYSDOH issued the Directives. They brought claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for deprivation of constitutional rights and rights under the Federal Nursing Home Reform Act, ("FNHRA"), as well as a wrongful death claim under New York law. They appeal from a January 10, 2025 order of the United States District Court for the Eastern District of New York (Hall, *J.*) granting Defendants' motions to dismiss. The district court dismissed the claims against Defendants Andrew M. Cuomo, Melissa DeRosa, and Dr. Howard A. Zucker (together, the "State Defendants") as barred by the doctrine of qualified immunity. It dismissed the Section 1983 claims against Defendants Greater New York Hospital Association, Kenneth Raske, Northwell Health, Inc., and Michael Dowling (together, the "Hospital Defendants") because it concluded that they did not act under color of state law, and it dismissed the Section 1985 claims for failing to plead animus. The district court declined to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Dolan v. Connolly*, 794 F.3d 290, 293

3

(2d Cir. 2015). And we review a district court's decision not to exercise supplemental jurisdiction over state-law claims for abuse of discretion. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 84 (2d Cir. 2013).

## I. The State Defendants

"The doctrine of qualified immunity protects 'government officials performing discretionary functions' from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes qualified immunity, courts consider whether a plaintiff has pled facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015). Instead, "clearly established law must be particularized to the facts of the case." *Francis*, 942 F.3d at 146 (quotation marks omitted). "[I]t is not necessary to find a 'case directly on point' in order to show that the law governing a plaintiff's claim is clearly established." *Terebesi v. Torreso*, 764 F.3d 217, 237 n.20 (2d Cir. 2014) (quoting *al-Kidd*, 563 U.S. at 741). But "[t]he rule must be settled law, which means it is dictated by controlling authority or a robust

4

consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up). Even if a plaintiff's rights are "clearly established," an official "will still be entitled to qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018).

The district court concluded that Plaintiffs' claims against the State Defendants failed to identify rights that were clearly established such that reasonable officials would have known that the Directives were unlawful. We agree and affirm the dismissal of the claims against the State Defendants.

Plaintiffs first argue that the FNHRA clearly establishes rights relating to the quality of treatment and conditions of nursing home residents. They argue that these rights are clearly established by "[t]he plain statutory language of the FNHRA" and by the Supreme Court's opinion in *Health & Hospital Corp. of Marion County v. Talevski,* 599 U.S. 166, 180-81 (2023). We disagree.

The Supreme Court held in *Talevski* that the provisions of the FNHRA that "refer to rights of nursing-home residents to be free from unnecessary physical or chemical restraints and to be discharged or transferred only when certain preconditions are satisfied" can be enforced through a private right of action under Section 1983. 599 U.S. at 171. The FNHRA enumerates rights of nursing home residents that "[a] nursing facility must protect and promote." 42 U.S.C. § 1396r(c)(1)(A). Here, Plaintiffs seek to enforce FNHRA rights against the State Defendants. But it was and is not clearly established that *government officials* have a legal duty to protect the rights set forth in the FNHRA. State and federal government officials have a clear statutory role as the *enforcer* of rights conferred by the statute. *See Talevski*, 599 U.S. at 182 (describing how

state and federal officials must, among other responsibilities, inspect nursing facilities for compliance with FNHRA standards and may sanction noncompliant facilities, including through exclusion from Medicaid). But nothing in the text of the FNHRA, its regulations, or caselaw would have put a reasonable official on notice that those rights of residents as against nursing homes applied to government officials.

Plaintiffs' constitutional claims fare no better. They assert that there are clearly established rights to be free from cruel, unhuman, or degrading treatment; to be free from state-created danger; to safe conditions; to bodily integrity; and to life. But these rights are articulated at too high a level of generality for qualified immunity purposes. "Qualified immunity is no immunity at all if clearly established law can simply be defined as the right to be free from a given constitutional injury." *Clark v. Valletta*, No. 23-7377-cv, 2025 WL 2825324, at *6 (2d Cir. Oct. 6, 2025) (quotation marks omitted). The rights Plaintiffs assert are defined too broadly and rely on cases involving very different facts. Nor would a reasonable official have known that he was violating such rights by promulgating the Directives in the early months of the Covid pandemic.

Plaintiffs cannot point to any cases involving rights to be free from cruel treatment or state-created danger in similar circumstances. Plaintiffs' cases identifying the right to be free from cruel treatment involve very different factual scenarios, such as kidnapping and torture by military forces. *See Abebe-Jira v. Negewo*, 72 F.3d 844, 847 (11th Cir. 1996); *Paul v. Avril*, 901 F. Supp. 330, 331 (S.D. Fla. 1994); *Xuncax v. Gramajo*, 886 F. Supp. 162, 169 (D. Mass. 1995). And Plaintiffs' state-created danger cases are similarly inapposite because they involve situations in which "a government official takes an affirmative act that creates an opportunity for a third party to harm a victim (or increases the risk of such harm)." *Lombardi v. Whitman*, 485 F.3d 73, 80

6

(2d Cir. 2007). Neither doctrine has been applied to a public-health crisis or to the unintentional conduct of third parties like returning hospital patients.

The cases recognizing a right to safe conditions also arise out of very different circumstances, typically when a plaintiff is *involuntarily* confined by the state. *See Brooks v. Giuliani*, 84 F.3d 1454, 1466 (2d Cir. 1996) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)).

Nor have Plaintiffs identified analogous cases involving the right to bodily integrity. The cases examining this right typically arise in the inapplicable context of consent to medical procedures. *See Blouin ex rel. Est. of Pouliot v. Spitzer*, 356 F.3d 348, 359-60 (2d Cir. 2004). The cases Plaintiffs cite are district court cases relating to different conditions, the dangers of which are well understood, unlike Covid in Spring 2020. *See Stewart v. Metro. Transp. Auth.,* 566 F. Supp. 3d 197, 208-10 (E.D.N.Y. 2019) (lead paint); *Davis v. N.Y. City Hous. Auth.*, 379 F. Supp. 3d 237, 257 (S.D.N.Y. 2019) (extreme cold).

Similarly, Plaintiffs have not shown that the Directives violate a clearly established right to life. The cases Plaintiffs cite stand for the proposition that "*when a constitutional violation caused the death of a victim,*" a plaintiff may bring suit under Section 1983 to recover for loss of life. Appellants' Br. at 32 (quoting *Berry v. City of Muskogee,* 900 F.2d 1489, 1501 (10th Cir. 1990)) (emphasis added). It would be circular to conclude that this clearly establishes the right Plaintiffs assert here.

Finally, even if Plaintiffs had identified clearly established rights, the State Defendants "will still be entitled to qualified immunity if it was objectively reasonable for [them] to believe that [their] acts did not violate those rights." *Outlaw*, 884 F.3d at 367. The Directives were promulgated in the early months of the Covid pandemic when "the Supreme Court ha[d] not

7

addressed the limits imposed by due process on a State's power to manage infectious diseases." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 190 (2d Cir. 2020). Under the unique circumstances of this case, a reasonable official could have believed that the Directives were a legitimate exercise of government power at the time they were implemented. Accordingly, the State Defendants are entitled to qualified immunity.

## II.    The Hospital Defendants

Plaintiffs appeal the dismissal of their Section 1983 and Section 1983 conspiracy claims against the Hospital Defendants.[1] A Section 1983 claim may be brought only "against state actors or private parties acting under the color of state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quotation marks omitted). As relevant here, a private party acts under the color of state law for purposes of a Section 1983 claim "when the private actor is a willful participant in joint activity with the State or its agents." *Id.* (quotation marks omitted). Although a Section 1983 conspiracy claim is distinct from one of joint action, the analysis "is very similar." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

To support their theory of joint action, Plaintiffs allege that the Directives were promulgated "at the behest of the Hospital Defendants," that the Hospital Defendants provided "massive campaign contributors [sic] to Public Defendant Cuomo" and his allies, and that the State Defendants had at least 288 meetings with "the hospital lobby" leading up to the Directives. Appellants' Br. at 46-47. Plaintiffs also allege that Defendants Raske and the Greater New York Hospital Association drafted legislation providing immunity for health care facilities and staff for harm caused by providing services to Covid patients.

---

[1] Plaintiffs also brought claims under Section 1985, but they do not challenge the dismissal of those claims on appeal.

A private party does not act under color of state law when it asks public officials to intervene for its benefit at the expense of someone else.   On the contrary, "Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law."   *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir. 1999).[2] We thus conclude that the Hospital Defendants did not act under color of state law and affirm the district court's dismissal of the federal claims against them.

## III.    State Law Claims

The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Plaintiffs' state-law wrongful death claims.   Plaintiffs ask us to reinstate their state-law claims if we reverse the dismissal of their federal claims, but do not suggest that the district court otherwise erred.   We thus affirm the dismissal of Plaintiffs' state-law claims.

*            *            *

We have considered Plaintiffs' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2]  Although Plaintiffs allege that the Hospital Defendants made political contributions, they do not allege that these contributions were bribes in exchange for the Directives.   *Cf. Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (parties who bribed a judge for an injunction "were acting under color of state law").

9